477 F.2d 841
 In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.
Appeal of BETHLEHEM STEEL CORPORATION, a Delaware
corporation in No. 72-1292.
Appeal of REPUBLIC STEEL CORPORATION, Cleveland, Ohio in No.
72-1293.
Appeal of BLUEBIRD FOOD PRODUCTS COMPANY in No. 72-1294.
Appeal of HARRY R. DEFLER CORPORATION in No. 72-1305.
Appeal of UNITED STATES STEEL CORPORATION in No. 72-1306.
Appeal of THOMAS J. HOLT CO., INC., in No. 72-1307.
Appeal of MILLER LUMBER CO., INC., Montross, Virginia in No. 72-1308.
 Nos. 72-1292 to 72-1294 and 72-1305 to 72-1308.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 29, 1973.
Decided April 27, 1973.
 
 W. Bradley Ward, Samuel D. Slade, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Bethlehem Steel Corp.
 John S. Estey, William R. Dimeling, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Republic Steel Corp. and Miller Lumber.
 Robert C. Cohen, Meltzer & Schiffrin, Philadelphia, Pa., for Blue Bird Food Products Co.
 Henry T. Reath, Reeder R. Fox, Duane, Morris & Heckscher, Philadelphia, Pa., for H. R. Defler Corp. and U. S. Steel Corp.
 Ned Stein, Comanor & Stein, Philadelphia, Pa., for Thomas J. Holt Co., Inc.
 Marvin Comisky, Goncer M. Krestal, Blank, Rome, Klaus & Comisky, Paul R. Duke, Philadelphia, Pa., for appellee.
 Before SEITZ, Chief Judge, ALDISERT, Circuit Judge, and LACEY, District Judge.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 The basic issue presented on this appeal is whether a reorganization court in a Sec. 77 proceeding has summary jurisdiction to enjoin a non-judicial set-off of claims for goods, services, and shipping losses and damages against freight charges, where such set-offs were effected prior to the Debtor's filing for reorganization.
 
 
 2
 The dispute arises out of a petition filed by the railroad trustees. The petition requested the court to issue an order directing certain shippers, including appellants, to pay bills still outstanding for pre-reorganization freight services, i.e., for charges incurred prior to June 21, 1970. Appellants filed answers and briefs asserting the right of set-off against these charges; these set-offs involved claims on charges for supplies and freight loss and damage claims arising during the period prior to the commencement of the reorganization proceedings.[1] Appellants contend that the amount of these set-offs exceeded the amounts owed for freight charges.
 
 
 3
 Although an affidavit was filed by the trustees alleging the amounts due them, the hearing below focused relatively little upon the validity of these amounts. Rather, it consisted almost entirely of oral argument on whether the reorganization court's summary jurisdiction as to these claims was defeated by the presence of appellant shippers' competing claims. After hearing argument on this latter point, the court determined it had summary jurisdiction and entered an order enjoining any set-off by appellants against monies owed by them for pre-reorganization freight charges. However, it deferred ruling on the amount of those charges still outstanding. This appeal followed.
 
 
 4
 Two conclusions were basic to the court's determination that it had summary jurisdiction over this controversy. First, it concluded that a regulated carrier's freight charges constitute a chose in action. Secondly, it concluded that under Secs. 3(1) and 6(7) of the Interstate Commerce Act [49 U.S.C. Secs. 3(1) & 6(7)(1971)], a shipper's claims against the carrier are not a defense to the carrier's claim for freight charges due. Therefore, since appellant shippers did not assert colorable adverse claims to the Debtor's choses in action, the court determined that it had the right to exercise summary jurisdiction with respect to the carrier's claims for freight charges.
 
 
 5
 The court's determination was based upon the holding of this circuit in Matter of Penn Central Transportation Company, 453 F.2d 520 (1972).[2] There we held that where there is no bona fide dispute concerning the Debtor's right in a chose in action at the time reorganization proceedings are instituted, the reorganization court can exercise summary jurisdiction under the statute with respect to the enforcement of that chose. Therefore, assuming the freight charges owed can be conclusively established on remand, the issue for our resolution becomes whether the pre-reorganization set-offs effected by appellants in settlement of their claims created a bona fide dispute as to the Debtor's legal entitlement to the freight charges previous to the filing of the reorganization petition.[3]
 
 
 6
 Under the Interstate Commerce Act, freight charges incurred pursuant to a filed tariff are accorded a legally superior status: that of a law. The only defense which can be raised to a carrier's suit for these legal charges is that the services have been paid for, that the services were not rendered, that the services were charged under an inapplicable tariff schedule, or that the rates were unreasonable.
 
 
 7
 The purpose of this limitation on defenses to an action by a carrier was to prevent secret kickbacks and preferences between large shippers and carriers. Thus, a set-off for damages incurred in shipment is not considered a defense since the potential for effecting preferences under such a guise seemed manifest. Similarly, a shipper and carrier cannot make provision for the supplying of goods and/or services in exchange for carriage. See, e.g., Northeast Airlines v. CAB, 345 F.2d 662 (1st Cir. 1965). Complementing this statutory scheme was a provision mandating that freight was not to be delivered until paid for in order to prevent the giving of preferences through the extension of credit. 49 U.S.C. Sec. 2(1971). Present Interstate Commerce Commission regulations in fact require a carrier to institute suit promptly if payment for freight charges is not made within ten days. Therefore, freight tariffs are accorded a special legal status which make inapplicable analogy to normal rules of commercial law.
 
 
 8
 Appellants rely principally upon the Supreme Court's opinion in Chicago & N.W. Ry. v. Lindell, 281 U.S. 14, 50 S. Ct. 200, 74 L.Ed. 670 (1930). There, as here, a carrier sued to collect freight charges; the shipper counterclaimed, asserting a loss due to the carrier's failure to perform under the shipping contract. The Court allowed the counterclaim to be asserted against the carrier in the same action, stating:
 
 
 9
 The adjudication in one suit of the respective claims of plaintiff and defendant is the practical equivalent of charging a judgment obtained in one action against that secured in another. Neither is to be distinguished from payment in money.
 
 
 10
 281 U.S. at 17, 50 S.Ct. at 201. The Court justified its position as not being in contravention of the Interstate Commerce Act by concluding that it would be a matter of judicial economy to allow the suit: having both parties before the court, it would be most economical to have the court adjudicate the various controversies between those parties in one proceeding. The court would serve to ensure that in fact such suits were not products of collusive agreements designed to thwart the prohibitions of the Interstate Commerce Act.
 
 
 11
 Although it is clear from Lindell that a counterclaim can be asserted against a carrier's suit for freight charges, our court has reiterated that under the Interstate Commerce Act, the subject matter of the counterclaim is not a defense to the carrier's claim for freight charges. Rather, it constitutes an independent claim. Southern Pacific Co. v. Miller Abattoir Co., 454 F.2d 357 (3d Cir. 1972). Its assertion by means of counterclaim is justified because the court can ensure that it does not result in circumvention of the Act and because it does further the administration of justice.
 
 
 12
 The remaining question posed is whether the intervention of reorganization proceedings creates a different situation. The district court implicitly assumed that while a counterclaim or set-off can be asserted against the carrier in a suit for collection of outstanding freight charges, it cannot be similarly recognized when a carrier seeks enforcement of its claim in a reorganization proceeding. We agree. Because the subject matter of the set-off or counterclaim does not constitute a defense to the carrier's freight claim, the intervention of reorganization proceedings forces analysis of different considerations. Since the Bankruptcy Act sets up a different process for disposition of creditor's claims, we do not believe these shippers' claims, which do not have the status of legal defenses, can defeat the right of the railroad to collect absolutely all legal charges for freight services outstanding and unpaid. Thus, at the inception of these proceedings, the carrier's choses in action arising out of freight charges had the same status as the carrier's deposits in the Bank Cases[4] and were therefore not subject to a bona fide dispute because of the presence of other disputes between the Debtor and the holder of Debtor's chose in action. Appellants merely had an independent claim against the Debtor which could have been litigated in the railroad's suit for charges had not the supervening structure of the Bankruptcy Act intervened.
 
 
 13
 One final issue raised by one of the appellants remains for disposition. It contends that under applicable Pennsylvania law, it extinguished its debt to the railroad by the nonjudicial set-off of a debt owed to it by the carrier, citing 12 P.S. Sec. 601(1953). Even assuming the validity of appellant's contention under Pennsylvania law, such a set-off would have been in express contravention of the Interstate Commerce Act. Indeed, the Act was so designed to prevent the kind of secret kickbacks which this type of practice could lead to. We believe our conclusion not only comports with the Supremacy Clause of the Constitution but in so doing, does not conflict with any other constitutional provision nor results in the granting of an unwarranted preference to other creditors.
 
 
 14
 Therefore, we conclude the district court correctly determined in the first instance that it had summary jurisdiction over these disputes and had the power to enjoin their set-off. However, on remand, the court must require the Debtor to attempt to establish the amounts owing by clear and convincing evidence. Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948). The court must then afford appellants an opportunity to challenge those amounts. Only then will the reorganization court be able to determine whether there is such a bona fide dispute and defense to Debtor's claim for freight charges as will defeat its exercise of summary jurisdiction.
 
 
 15
 Given our conclusion that the reorganization court will have the right to exercise summary jurisdiction if the proper showing is made on remand, it follows that it can also exercise its sound discretion, once again, in determining whether or not to permit set-off or counterclaim against the Debtor's charges. This procedure was approved by this court in the Bank Cases. Our disposition of this case renders it unnecessary to decide the other contentions raised by the parties.
 
 
 16
 The order of the district court will be affirmed and the matter remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 One appellant's answer does not assert a pre-reorganization set-off. Another's answer does not clearly indicate that an attempted set-off was made before the filing of the reorganization petition. In view of our disposition of this appeal, we need not consider the effect of these variations
 
 
 [2]
 Hereinafter cited as Bank Cases
 
 
 [3]
 One appellant argues that because there was allegedly an effective nonjudicial setoff before these proceedings were instituted, there was no property of the Debtor in that appellant's possession at the inception of the reorganization proceedings. We view that argument as but another formulation of the basic issue posed as to the reorganization status of the appellants' claims
 
 
 [4]
 We do not necessarily approve all the authority cited in this opinion