## BAKER et al., TRUSTEES IN REORGANIZATION
## v. GOLD SEAL LIQUORS, INC.

No. 73–804. Argued April 23, 1974—Decided June 17, 1974

Douglas, J., wrote the opinion of the Court, in which Burger, C. J., and Brennan, Marshall, White, and Blackmun, JJ., joined. Stewart, J., filed an opinion concurring in the result, in which Powell, J., joined, *post*, p. 474. Rehnquist, J., filed a dissenting opinion, *post*, p. 478.

*Paul R. Duke* argued the cause for petitioners. With him on the brief was *John E. Wallace, Jr.*

*Theodore J. Herst* argued the cause and filed a brief for respondent.

Opinion of the Court by Mr. Justice Douglas, announced by Mr. Justice White.

The Penn-Central Transportation Co. is in bankruptcy reorganization under § 77 of the Bankruptcy Act, 11

U. S. C. § 205. Petitioners are its trustees authorized to collect its assets, one of which is a claim for freight charges against respondent owed the bankrupt debtor. The claim on which this suit was brought was $8,256.61 and the amount is undisputed. Respondent filed a counterclaim for $19,319.42 for loss and damage to shipments over the debtor's lines. Its amount is also not disputed.

The trustees filed a motion for summary judgment asking the District Court to enter one judgment covering the amount of freight charges admittedly due and another for the amount claimed by respondent.

Previously the Reorganization Court in the Third Circuit had prohibited the various bank creditors from offsetting their claims against the trustees of the debtor. 315 F. Supp. 1281. Prior to the decision of the instant case that bank setoff case was affirmed by the Court of Appeals, 453 F. 2d 520. Also prior to the ruling of the Court of Appeals in the instant case the Reorganization Court prohibited some shippers from setting off freight loss and damage claims against amounts owed for transportation claims. That order, 339 F. Supp. 603, was affirmed by the Court of Appeals, 477 F. 2d 841, and by this Court, *sub nom. United States Steel Corp.* v. *Trustees of Penn Central Transp. Co.*, 414 U. S. 885.

The District Court in the instant case granted the trustees' motion for summary judgment but set off one judgment against the other, which resulted in a net judgment in favor of respondent against the trustees in the amount of $11,017.01. The Court of Appeals affirmed, 484 F. 2d 950, and we granted certiorari to resolve the conflict.

We reverse.

Ordinarily where a court has primary jurisdiction over the parties and over the subject matter, the power to resolve the amount of the claim and the counterclaim is

clear. Indeed, under the Federal Rules of Civil Procedure the counterclaim may be compulsory. Rule 13 (a).[1] That is the procedure under § 68 of the Bankruptcy Act, 11 U. S. C. § 108.[2]

---

[1] Rule 13 (a), the compulsory-counterclaim rule, requires a defendant to plead any counterclaim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The claim is not compulsory if it was the subject of another pending action at the time the action was commenced, or if the opposing party brought his suit by attachment or other process not resulting in personal jurisdiction but only *in rem* or *quasi in rem* jurisdiction. A counterclaim which is compulsory but is not brought is thereafter barred, *e. g., Mesker Bros. Iron Co.* v. *Donata Corp.*, 401 F. 2d 275, 279.

If a counterclaim is compulsory, the federal court will have ancillary jurisdiction over it even though ordinarily it would be a matter for a state court, *e. g., Great Lakes Rubber Corp.* v. *Herbert Cooper Co.*, 286 F. 2d 631. Under Rule 13 (a)'s predecessor this Court held that "transaction" is a word of flexible meaning which may comprehend a series of occurrences if they have logical connection, *Moore* v. *New York Cotton Exchange*, 270 U. S. 593, and this is the rule generally followed by the lower courts in construing Rule 13 (a), *e. g., Great Lakes, supra; United Artists Corp.* v. *Masterpiece Productions*, 221 F. 2d 213, 216.

Rule 13 (b) permits as counterclaims, although not compulsory, "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Thus the court may dispose of all claims between the parties in one proceeding whether or not they arose in the "same transaction."

[2] Title 11 U. S. C. § 108 provides:

"(a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

"(b) A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision (g) of section 93 of this title; or

The problem of the bankruptcy Reorganization Court is somewhat different. Liquidation is not the objective. Rather, the aim is by financial restructuring to put back into operation a going concern.[3] That entails two basic considerations:

(2) was purchased by or transferred to him after the filing of the petition or within four months before such filing with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy."

If the trustee in ordinary bankruptcy goes into a court that has jurisdiction and asserts a claim, the debtor of the bankrupt may raise as a setoff any claim he has against the bankrupt and the court ordinarily issues only one judgment for the difference.

In a straight bankruptcy case, *Cumberland Glass Co.* v. *De Witt*, 237 U. S. 447, the Court construed § 68 as "permissive rather than mandatory" and as to which the bankruptcy court "exercises its discretion . . . upon the general principles of equity." *Id.*, at 455. And see *Susquehanna Chemical Corp.* v. *Producers Bank & Trust Co.*, 174 F. 2d 783.

[3] The dissent places mistaken reliance on subsection *l* of § 77 of the Bankruptcy Act, 11 U. S. C. § 205 (*l*), to argue that the setoff provision of § 68, 11 U. S. C. § 108, necessarily applies to all reorganization proceedings under § 77. No authority is cited for this novel construction of subsection *l*, and indeed the very wording of the subsection itself makes clear that it applies only when "consistent with the provisions" of § 77. We have long held that the distinctive purposes of § 77 may require different procedures than would be followed in ordinary bankruptcy. For example, in holding that under § 77 the Reorganization Court had authority to enjoin the sale of collateral if it would hinder or obstruct the preparation of a reorganization plan, we stated: "It may be that in an ordinary bankruptcy proceeding the issue of an injunction in the circumstances here presented would not be sustained. As to that it is not necessary to express an opinion. But a proceeding under § 77 is not an ordinary proceeding in bankruptcy. It is a special proceeding which seeks only to bring about a reorganization, if a satisfactory plan to that end can be devised. And to prevent the attainment of that object is to defeat the very end the accomplishment of which was the sole aim of the section, and thereby to render its pro-

First is the collection of amounts owed the bankrupt to keep its cash inflow sufficient for operating purposes, at least at the survival levels. The second is to design a plan [4] which creditors [5] and other claimants will approve, which will pass scrutiny of the Interstate Commerce Commission, which will meet the fair-and-equitable standards required by the Act for court approval, and which will preserve an ongoing railroad in the public interest.[6]

Section 77a gives the Reorganization Court "exclusive jurisdiction of the debtor and its property wherever located." [7]  11 U. S. C. § 205 (a).  In furtherance of its

visions futile." *Continental Bank* v. *Rock Island R. Co.*, 294 U. S. 648, 676.  And see *New Haven Inclusion Cases*, 399 U. S. 392, 420.

Ordinary bankruptcy aims at liquidation of a business.  Reorganization under § 77 aims at a continuation of the old business under a new capital structure that respects the relative priorities of the various claimants.

[4] Section 77b, 11 U. S. C. § 205 (b), defines a "plan of reorganization."  The provisions for filing a "plan" with the court and with the Interstate Commerce Commission are governed by § 77d, 11 U. S. C. § 205 (d).

[5] Unsecured creditors have the priority they would have had "if a receiver in equity of the property of the debtor had been appointed by a Federal court on the day of the approval" of the bankruptcy petition and shall be treated as a separate class or classes.  11 U. S. C. § 205 (b).  As to that priority see *Gregg* v. *Metropolitan Trust Co.*, 197 U. S. 183.  In *St. Louis & S. F. R. Co.* v. *Spiller*, 274 U. S. 304, 311, the Court said: "[B]y long established practice, the doctrine has been applied only to unpaid expenses incurred within six months prior to the appointment of the receivers. . . .  The cases in which this time limit was not observed, are few in number and exceptional in character."

[6] *New Haven Inclusion Cases, supra,* at 420.

[7] Section 77a provides in relevant part: "If the petition is so approved, the court in which the order is entered shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located, and shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a court of the United States would have had if it

long-range responsibilities the Reorganization Court enjoined secured creditors from selling collateral to reduce their claims.[8]  It then went on to bar enforcement of liens against the debtor, taking possession of its property, or obtaining judgments against the debtor, except for specified purposes.[9]  One court seized upon the last provision in the order which says "that suits or claims for damages caused by the operation of trains, buses, or

had appointed a receiver in equity of the property of the debtor for any purpose.  Process of the court shall extend to and be valid when served in any judicial district."

As MR. JUSTICE STEWART correctly notes, *infra*, at 476, it is settled that "property" within the meaning of this section includes intangibles such as choses in action.

[8] The order provided in part: "All persons, firms and corporations, holding collateral heretofore pledged by the Debtor as security for its notes or obligations or holding for the account of the Debtor deposit balances or credits be and each of them hereby are [*sic*] restrained and enjoined from selling, converting or otherwise disposing of such collateral, deposit balances or other credits, or any part thereof, or from offsetting the same, or any [*sic*] thereof, against any obligation of the Debtor, until further order of this Court."

[9] "All persons and all firms and corporations, whatsoever and wheresoever situated, located or domiciled, hereby are restrained and enjoined from interfering with, seizing, converting, appropriating, attaching, garnisheeing, levying upon, or enforcing liens upon, or in any manner whatsoever disturbing any portion of the assets, goods, money, deposit balances, credits, choses in action, interests, railroads, properties or premises belonging to, or in the possession of the Debtor as owner, lessee or otherwise, or from taking possession of or from entering upon, or in any way interfering with the same, or any part thereof, or from interfering in any manner with the operation of said railroads, properties or premises or the carrying on of its business by the Debtor under the order of this Court and from commencing or continuing any proceeding against the Debtor, whether for obtaining or for the enforcement of any judgment or decree or for any other purpose, provided that suits or claims for damages caused by the operation of trains, buses, or other means of transportation may be filed and prosecuted to judgment in any Court of competent jurisdiction . . . ."

other means of transportation may be filed and prosecuted to judgment in any Court of competent jurisdiction," to adjudicate the merits of a counterclaim, but declined to allow the setoff.[10] But proof of the claim against the debtor is a distinct preliminary stage to a determination of what priority, if any, the claim that is proved receives in a reorganization plan.

There is a hierarchy of claims, the owner of the equity coming last. Wages owing workers running the trains have a high current priority. Secured creditors have by law a priority in the hierarchy. Unsecured creditors usually are pooled together. They may receive new securities, perhaps stock. Allowance of a setoff that reduces all or part of the debtor's claim against them is a form of priority. The guiding principle governing priorities is stated in § 77e (1), 11 U. S. C. § 205 (e)(1): the Reorganization Court shall approve a plan if it "is fair and equitable, affords due recognition to the rights of each class of creditors and stockholders, does not discriminate unfairly in favor of any class of creditors or stockholders, and will conform to the requirements of the law of the land regarding the participation of the various classes of creditors and stockholders."

The term "fair and equitable" has a long history going back at least to *Northern Pacific R. Co.* v. *Boyd,* 228 U. S. 482, and *Kansas City Terminal R. Co.* v. *Central Union Trust Co.,* 271 U. S. 445, whose fixed principle has been carried over into § 77e by our decisions.[11] The plan

---

[10] *Baker* v. *Southeastern Michigan Shippers Assn.,* 376 F. Supp. 149.

[11] *Ecker* v. *Western Pacific R. Corp.,* 318 U. S. 448, 477–483; *Group of Investors* v. *Milwaukee R. Co.,* 318 U. S. 523, 539–541; *RFC* v. *Denver & R. G. W. R. Co.,* 328 U. S. 495, 516–520. The same is true under § 101 *et seq.* (now c. X) of the Bankruptcy Act, 11 U. S. C. § 501 *et seq. Consolidated Rock Products Co.* v. *Du Bois,* 312 U. S. 510.

is by the terms of § 77 a product of the Interstate Commerce Commission and the Reorganization Court working cooperatively together, *New Haven Inclusion Cases,* 399 U. S. 392, 431. The public interest, as well as the interests of creditors and stockholders, is at issue.[12]  *RFC* v. *Denver & R. G. W. R. Co.,* 328 U. S. 495, 535.

The allowance or disallowance of setoff may seem but a minor part of the architectural problem. But to the extent that it is allowed, it grants a preference to the claim of one creditor over the others by the happenstance that it owes freight charges that the others do not. That is a form of discrimination to which the policy of § 77 is opposed. As a general rule of administration for § 77 Reorganization Courts, the setoff should not be allowed.[13]

*Reversed.*

Mr. Justice Stewart, with whom Mr. Justice Powell joins, concurring in the result.

The Court concludes that since the allowance of a setoff in a § 77 reorganization would grant "a preference to the claim of one creditor over the others by the happenstance that it owes freight charges that the others do not," such setoffs should be disallowed "[a]s a general rule of administration." *Ante,* this page. While I agree that the District Court should not have permitted a setoff in this case, I think that the broad rule adopted by

---

[12] And see *New Haven Inclusion Cases,* 399 U. S., at 420.

[13] *Lowden* v. *Northwestern National Bank & Trust Co.,* 298 U. S. 160, is not to the contrary. The Court there refused to answer the certified question because it did not know the factual setting in which the question had been raised. Much law has been fashioned in the reorganization field since 1936, the date of that decision. The contours of plans have emerged which have given new meaning and insight into the statutory words "fair and equitable." The preference sought here shows no exceptional circumstances which in equity justify the discrimination.

the Court is unnecessary to reach this result, and I prefer to rest my conclusion on a narrower ground.

While judicial setoffs are specifically authorized in straight bankruptcy cases, § 68 of the Bankruptcy Act, 11 U. S. C. § 108, no express approval of them appears in the statute governing § 77 reorganizations.[1] In *Lowden v. Northwestern National Bank & Trust Co.*, 298 U. S. 160 (1936), this Court stated that the approval of setoffs in § 68 did not control in railroad reorganizations but "governs, if at all, by indirection and analogy according to the circumstances. The rule to be accepted for the purpose of such a suit is that enforced by courts of equity, which differs from the rule in bankruptcy chiefly in its greater flexibility, the rule in bankruptcy being framed in adaptation to standardized conditions, and that in equity varying with the needs of the occasion, though remaining constant, like the statute, in the absence of deflecting forces." *Id.*, at 164–165.[2]

---

[1] I am unable to conclude, as does the dissent, *post*, at 479–480, that subsection *l* of § 77 mandates allowance in § 77 reorganizations of all setoffs allowed by § 68 in straight bankruptcies. While the dissent's ingenious reading of the statute would provide an easy semantic solution to the problem presented in this case, I am impressed with the fact that neither this Court in *Lowden v. Northwestern National Bank & Trust Co.*, 298 U. S. 160 (1936), nor, apparently, any other federal trial or appellate court has considered subsection *l* to have any bearing whatsoever on the setoff problem. In the absence of any showing based on legislative history that such was the intent of Congress, and particularly in the absence of any briefing or oral argument on the matter, I would not, therefore, give this less-than-pellucid provision the force ascribed to it by the dissenting opinion.

[2] These statements of the Court concerning allowance of judicial setoffs in § 77 cases were, in a technical sense, dicta. The *Lowden* case came to the Court on questions certified by the Court of Appeals for the Eighth Circuit, and the Court dismissed the certificate without formally answering the questions because of the "defec-

By announcing a doctrine barring judicial setoffs as a "general rule" the Court in the present case adopts a rationale inconsistent with *Lowden,* which quite clearly envisioned a case-by-case analysis of the propriety of each attempted setoff in the light of equitable considerations. Rather than replacing this principle with a new and wholly inconsistent rule to be applied in all cases involving judicial setoffs, I would rest this decision on the particular facts before us, which adequately distinguish this case from the situation in *Lowden.*[3]

Section 77a gives the Reorganization Court *"exclusive jurisdiction* of the debtor and *its property wherever located."* (Emphasis added.) It has been commonly accepted in the federal courts that "property" within the meaning of this section includes intangibles such as choses in action. See 2 W. Collier, Bankruptcy ¶ 23.05 [4], p. 485 (1971), and cases there cited. It follows, therefore, that respondent's debt to the Penn Central fell within the "exclusive jurisdiction" of the Reorganization Court immediately upon the approval of the petition for reorganization. While such jurisdiction may not empower the Reorganization Court to *enforce* the cause of action, see *id.,* at 489–490; *In re Roman,* 23 F. 2d 556 (CA2 1928) (L. Hand, J.), it certainly does empower the

---

tive form of the certificate . . . ." 298 U. S., at 166. The Court's reasoning as to the availability of setoffs, however, has been viewed as authoritative. See, *e. g., In re Lehigh & Hudson River R. Co.,* 468 F. 2d 430, 433 (CA2 1972); *In re Yale Express System,* 362 F. 2d 111, 116–117 (CA2 1966); *Susquehanna Chemical Corp.* v. *Producers Bank & Trust Co.,* 174 F. 2d 783, 787 (CA3 1949). See also 4 W. Collier, Bankruptcy ¶ 68.10 [2], pp. 898–900, n. 17 (1971).

[3] Because of my view of this case I need not comment on the propriety of the rule adopted by the Court, although I think there are strong arguments that the rule can be unfair, see, *e. g., In re Lehigh & Hudson River R. Co., supra,* at 434, and that those arguments are not dealt with in the Court's opinion today.

court to protect the "property" and to immunize it from diminution through setoff or counterclaim. To hold otherwise would be inconsistent with the function of the Reorganization Court to consolidate and protect the assets of the petitioning corporation. *Callaway* v. *Benton,* 336 U. S. 132, 147 (1949); *Warren* v. *Palmer,* 310 U. S. 132, 139–141 (1940); *Ex parte Baldwin,* 291 U. S. 610, 615 (1934).

While the matter is not wholly free from doubt, I am persuaded that the Reorganization Court in this proceeding did in fact enjoin the allowance by any other court of judicial setoffs against any debts owed to the Penn Central.[4] On this basis I join the judgment of the Court.

---

[4] The Reorganization Court's initial order approving the Penn Central's petition for reorganization, filed on June 21, 1970, contained the following provisions:

"9. All persons and all firms and corporations, whatsoever and wheresoever situated, located or domiciled, hereby are restrained and enjoined from interfering with, seizing, converting, appropriating, attaching, garnisheeing, levying upon, or enforcing liens upon, or in any manner whatsoever disturbing any portion of the assets, goods, money, deposit balances, credits, choses in action, interests, railroads, properties or premises belonging to, or in the possession of the Debtor as owner, lessee or otherwise, or from taking possession of or from entering upon, or in any way interfering with the same, or any part thereof, or from interfering in any manner with the operation of said railroads, properties or premises or the carrying on of its business by the Debtor under the order of this Court and from commencing or continuing any proceeding against the Debtor, whether for obtaining or for the enforcement of any judgment or decree or for any other purpose, provided that suits or claims for damages caused by the operation of trains, buses, or other means of transportation may be filed and prosecuted to judgment in any Court of competent jurisdiction, and provided, further, that the title of any owner, whether as trustee or otherwise, to rolling stock equipment leased or conditionally sold to the Debtor, and any right of such owner to take possession of such property in compliance with

MR. JUSTICE REHNQUIST, dissenting.

The question in this case is whether the United States District Court for the Northern District of Illinois, wherein petitioners filed their claim for money damages against respondent, and the Court of Appeals for the Seventh Circuit, which affirmed the District Court's order setting off respondent's claim against petitioners, acted within the permissible limits of their discretion. The statute most closely in point is § 68a of the Bankruptcy Act, 11 U. S. C. § 108, which provides:

> "(a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

In the only case of this Court dealing with the applicability of § 68a to railroad reorganizations, the Court said:

> "[T]he trustees must have the power to gather in the assets and keep the business going. To exercise that power, they may find it necessary to sue, and the suit may turn upon the right of set-off, as it does in the case at hand. In a suit for such a purpose, a suit collateral to the main proceeding and initiated at a time when the outcome of that pro-

___

the provisions of any such lease or conditional sale contract, shall not be affected by the provisions of this order.

"10. All persons, firms and corporations, holding collateral heretofore pledged by the Debtor as security for its notes or obligations or holding for the account of the Debtor deposit balances or credits be and each of them hereby [is] restrained and enjoined from selling, converting or otherwise disposing of such collateral, deposit balances or other credits, or any part thereof, or from offsetting the same, or any part thereof, against any obligation of the Debtor, until further order of this Court."

ceeding is still unknown and unknowable, § 68 of the statute does not control the disposition of the controversy *ex proprio vigore*. It governs, if at all, by indirection and analogy according to the circumstances. . . ." *Lowden* v. *Northwestern National Bank & Trust Co.*, 298 U. S. 160, 164 (1936). "When all the facts are known, they may be found to offer no excuse for a departure from the rule in bankruptcy which, as indicated already, is generally, even if not always, the rule in equity as well." *Id.*, at 166.

The Court's opinion in *Lowden, supra,* makes no mention of subsection *l* of § 77 of the Bankruptcy Act, 11 U. S. C. § 205 (*l*), which provides in pertinent part as follows:

"(*l*) *Jurisdiction of court, duties of debtor and rights of creditors same as in voluntary bankruptcy.*

"In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed."

Section 77, in turn, was a part of the Act of Mar. 3, 1933, c. 204, 47 Stat. 1467, which added Chapter VIII to the Bankruptcy Act. Any lingering doubt that the term "voluntary petition for adjudication" in subsection *l* refers to ordinary bankruptcy proceedings is dispelled by an examination of § 73, which was the first section of that Act:

"Sec. 73. Additional Jurisdiction.—In addition to the jurisdiction exercised in voluntary and involun-

tary proceedings to adjudge persons bankrupt, courts of bankruptcy shall exercise original jurisdiction in proceedings for the relief of debtors, as provided in sections 74, 75, and 77 of this Act." 47 Stat. 1467.

The language of subsection *l* of § 77, even more emphatically than the *Lowden* decision, would seem to unconditionally mandate the application of the rule regarding setoffs contained in § 68 of the Bankruptcy Act to railroad reorganizations such as this.

Subsection a of § 77, 11 U. S. C. § 205 (a), giving the Reorganization Court "exclusive jurisdiction of the debtor and its property wherever located," upon which the Court's opinion heavily relies, seems to me to have virtually nothing to do with this case. We are not dealing with property that was actually or constructively in the possession of the trustees at the time of the commencement of the reorganization proceedings, nor are we dealing with a creditor who in any way submitted itself to the jurisdiction of the Reorganization Court in the Eastern District of Pennsylvania.

This is a simple contract claim for freight charges on the part of the trustees, against which the respondent has sought to set off a concededly valid claim for damage in transit. While the Reorganization Court undoubtedly had plenary authority over the trustees, and over the "property" of the debtor, it certainly does not have such jurisdiction over whatever funds of respondent might be used to satisfy a judgment against it in favor of the trustees. The trustees' "property" in this case is a chose in action and under no conceivable circumstances could § 77 authorize the summary determination of the claim in this case.

> "[T]he bankruptcy court does not have summary jurisdiction to *enforce* a chose in action against the bankrupt's obligor, even when the bankrupt's rights

seem clear. . . ." *In re Lehigh & Hudson River R. Co.*, 468 F. 2d 430, 433 (CA2 1972) (Friendly, C. J.). "Even though [the obligor's] refusal were no better than colorable, its property remained its own; it had only broken its promise, and, like any other promisor, was liable to an action for damages. . . . It would not be permissible to collect even a bank deposit due a bankrupt by these means." *In re Roman*, 23 F. 2d 556, 558 (CA2 1928) (L. Hand, J.).

Cases such as *Ex parte Baldwin*, 291 U. S. 610 (1934), and *Warren* v. *Palmer*, 310 U. S. 132 (1940), do no more than reaffirm the well-established doctrine that the jurisdiction of the bankruptcy court over the property of the debtor is exclusive. They do not touch upon the case before us, where the trustees have chosen to convert the chose in action, which is concededly the property of the debtor and subject to the jurisdiction of the Reorganization Court, into a money judgment in another forum.

*Callaway* v. *Benton*, 336 U. S. 132 (1949), though not on all fours with the present case, can hardly be said to support the result reached by the Court. There an action had been brought in the state courts of Georgia to enjoin the board of directors of a corporation which had leased trackage to the Central of Georgia Railway from consenting to the plan of reorganization which had been proposed on behalf of Central of Georgia, which was a debtor in a § 77 proceeding. The bankruptcy court had in turn enjoined this litigation on the ground that it interfered with the exclusive jurisdiction of the bankruptcy court. This Court reversed that determination saying:

"We have held that a court of bankruptcy has exclusive and nondelegable control over the administration of an estate in its possession. *Thompson* v. *Magnolia Petroleum Co.*, 309 U. S. 478 (1940); *Isaacs* v.

*Hobbs Tie & T. Co.,* 282 U. S. 734 (1931). There can be no question, however, that Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate." 336 U. S., at 142 (footnote omitted).

If we accept *Lowden* as the final word from this Court on the question, even though the opinion nowhere refers to the language of subsection *l,* which on its face would carry over the rule of § 68 bag and baggage, the most that can be said in favor of the petitioners here is that the District Court in which suit is brought has discretion as to whether or not a setoff should be allowed.

Nothing could be more inconsistent with *Lowden* than the flat order of the Reorganization Court in this case, entered at the commencement of the reorganization proceedings, to the effect that *no* setoffs were to be allowed, unless it be that part of the Court's opinion in this case stating that "[a]s a general rule of administration for § 77 Reorganization Courts, the setoff should not be allowed." *Ante,* at 474. And it seems a sufficient answer to the Court's observation that the allowance of a setoff grants a preference, *ante,* at 473, to say that the Bankruptcy Act's strictures against preferences apply with as much force to ordinary bankruptcies as to reorganizations, and yet § 68 of the Act specifically allows this type of "preference" in an ordinary bankruptcy proceeding.

It may be that upon a proper showing to the District Court for the Northern District of Illinois the trustees could have satisfied that court that the allowance of a setoff in this case would be inconsistent with higher priorities of the reorganization. But no such showing was made by the trustees, and they were content to rely on the *ex parte* order of the Reorganization Court which made no pretense of considering matters on a case-by-

case basis. The District Court for the Northern District of Illinois was, therefore, in my opinion, justified in authorizing the setoff under the doctrine of *Lowden,* and the Court of Appeals for the Seventh Circuit was correct in affirming its judgment.