Blanchette et al., Appellees, *v.*
Tuschman Steel Company, Appellant.

[Cite as Blanchette v. Tuschman (1978),
60 Ohio App. 2d 55.]

(No. L 77-210—Decided October 13, 1978.)

*Mr. Michael E. McGill,* for appellees.
*Mr. David Wicklund,* for appellant.

Connors, J. This is an appeal from a judgment, entered in the Common Pleas Court of Lucas County, granting plaintiffs claim for $17,464.69, plus interest, and denying defendant's counterclaim for the same amount.

Plaintiffs are trustees of the property of Penn Central Transportation Company, a common carrier engaged in interstate commerce. Since June 21, 1970, such carrier has been in bankruptcy reorganization under Section 77 of the Bankruptcy Act (Section 205, Title 11, U. S. Code). Defendant Tuschman Steel Company, among its various business operations, served as a broker in scrap metal purchased from Penn Central.

On a number of occasions prior to 1970, Tuschman overpaid Penn Central for scrap steel purchased and delivered to a Sharpsburg, Pennsylvania, customer. However, a pro-

cedure was established whereby Penn Central would repay Tuschman for any properly documented overpayments. This procedure of overpayment, documentation and repayment continued until 1970.

Beginning in January 1970, Penn Central ceased making repayments to Tuschman and the amount of defendant's overpayments soon rose to more than $18,000. As of June 21, 1970, the date of Penn Central's bankruptcy reorganization, the amount of Tuschman's overpayments had been reduced to $17,464.69.

During the post-reorganization year 1972, Tuschman ordered—and the plaintiff trustees supplied—scrap metal having a reasonable value of $17,464.69. When Tuschman withheld payment for these orders, plaintiffs, on May 26, 1976, filed suit to collect the full amount. Defendant filed a counterclaim, seeking recovery of the $17,464.69 in prepayments made to Penn Central prior to June 21, 1970.

Defendant had framed two assignments of error for this court's consideration:

"1. The trial court erred, as a matter of law, in denying Tuschman Steel Company's counterclaim, holding (1) that the law of Ohio did not apply and (2) that Penn Central had a right to retain overpayments improperly exacted from Tuschman for scrap metal purchased by Tuschman from Penn Central but never delivered.

"2. The trial court erred, as a matter of law, in holding that the ruling in Baker, et al., Trustees vs. Gold Seal Liquors, Inc., 417 U. S. 467 (1974) authorized Penn Central to retain the overpayments improperly exacted from Tuschman for scrap metal purchased but never delivered."

We do not agree with defendant's interpretation of the lower court's findings of fact and conclusions of law as set forth in the wording of its assignments of error. The lower court did not hold that the law of Ohio was inapplicable. Further, there was no finding that Penn Central "improperly exacted" overpayments from Tuschman.

The record presented to this court fails to support the arguments offered in support of defendant's assignments of error. There is no evidence of fraud on the part of either the railroad or the plaintiff trustees; defendant's overpayments during 1970 were not made "under mistake of fact." Fur-

ther, there is convincing evidence that, consistent with reorganization procedures, plaintiffs did reject defendant's debit memoranda.

We believe that the central issue in this case is more accurately framed as follows:

Would the allowance of defendant Tuschman's attempted set-off and counterclaim against plaintiff Trustees frustrate the purpose of Section 77 of the Bankruptcy Act?

At the outset, we shall address the question of defendant's attempted set-off. Although defendant now claims that no set-off was attempted, the record indicates otherwise. Tuschman's tactic of ordering, but failing to pay for, a quantity of scrap steel during 1972—the price of which exactly equaled the total of overpayments made to Penn Central during 1970—cannot be dismissed as mere coincidence. Further, in its own answer and counterclaim, filed in the Lucas County Common Pleas Court on July 23, 1976, defendant admitted that a set-off had been attempted:

"In order to obtain payment of said debit memos and invoices, it [Tuschman] set off the amount of said debit memos and invoices, $17,464.69, against the purchase price of the scrap metal furnished by plaintiff to it between June 1, 1972 through July 13, 1972."

In order to formulate an adequate response to that issue, which we consider central to the determination of this appeal, we must first consider both the primary purpose of Section 77 of the Bankruptcy Act and the major problems it was designed to alleviate.

The Railroad Reorganization Act, Section 77 of the Bankruptcy Act, was passed in 1933, a year which found many railroads in serious financial difficulty. [1] Prior to the enactment of this legislation, a rail line could be forced into receivership in either a state or federal court. If such a proceeding was filed in a state court, ancillary proceedings were required in every other state in which the rail line held property; if in a federal court, ancillary proceedings were

---

[1] See Barber, *Railroad Reorganization, Section 77, and The Need for Legislative Reform,* 21 U.C.L.A.L. Rev. 553 (1973); Weiner, *Reorganization Under Section 77: A Comment,* 33 Colum. L. Rev. 834 (1933); Lowenthal, *The Railroad Reorganization Act,* 47 Harv. L. Rev. 18 (1933).

necessary in every federal circuit in which property was owned. Such procedures caused confusion, delay, nuisance suits and no small amount of expense, [2] and led, in some instances, to the interruption of vital rail services. It was this cumbersome procedure and its often unacceptable results that the drafters of Section 77 hoped to cure.

In the words of one commentator:

"Section 77 has for its main purpose 'the rehabilitation of the debtor by a readjustment of its financial structure in the interest of the debtor and its creditors and security holders, under a fair and equitable plan of reorganization which shall so modify or alter the rights of both secured and unsecured creditors that the fixed charges shall be brought within the probable future earnings available for the payment thereof.' During the process of reorganization, the section contemplates the continued corporate existence of the debtor under the control and supervision of the court. Although Section 77 does not depart from the general theory of the Bankruptcy Act that one of the main purposes is to permit the creditors to share in the debtor's assets, yet it should be borne in mind that the section reflects a public policy that the operation of railroads as sound, economic units should be achieved for the benefit of the public, regardless of the interests of creditors and stockholders. It has been vividly stated that under Section 77 'the reorganized road shall be a living, not a dying, railroad enterprise.' To this end, any reorganization plan should not merely provide immediate relief, but should be drastic enough to assure the continued solvency of the enterprise, even under unfavorable conditions." 5 Collier on Bankruptcy, Section 77.02 (14th ed 1976).

This purpose was reaffirmed in *Continental Bank* v. *Rock Island R. Co.* (1935), 294 U. S. 648, and in *New Haven Inclusion Cases* (1970), 399 U. S. 392. More recently, in *Baker,* v. *Gold Seal Liquors, Inc.* (1974), 417 U. S. 467, the Supreme Court re-emphasized the unique character and purpose of Section 77:

"The problem of the bankruptcy Reorganization Court is somewhat different. Liquidation is not the objective. Rather,

---

[2] See Laughlin, *The Extraterritorial Powers of Receivers,* 45 Harv. L. Rev. 429 (1932).

the aim is by financial restructuring to put back into operation a going concern. That entails two basic considerations: First is the collection of amounts owed the bankrupt to keep its cash inflow sufficient for operating purposes, at least at the survival levels. The second is to design a plan which creditors and other claimants will approve, which will pass scrutiny of the Interstate Commerce Commission, which will meet the fair-and-equitable standards required by the Act for court approval, and which will preserve an ongoing railroad in the public interest." (Page 470-71.)

"Ordinary bankruptcy aims at liquidation of a business. Reorganization under Section 77 aims at a continuation of the old business under a new capital structure that respects the relative priorities of the various claimants." (Page 471, note 3.)

Thus, it would appear clearly established that the primary purpose of Section 77 of the Bankruptcy Act is a consolidation and protection of the assets of a petitioning railroad, in order that a transportation service, the continuation of which is very much in the public interest, can be maintained. It would appear equally clear that the rights of the railroad's creditors, though certainly to be considered, are subordinate to this primary goal.

Having outlined the major goal of Section 77, we must next determine if defendant's attempted set-off and counterclaim constituted an effort to frustrate that goal.

On June 21, 1970, following an extended period of financial difficulty, Penn Central Transportation Company, the nation's largest railroad line, filed for bankruptcy reorganization in Federal District Court. As of that date the railroad owed defendant Tuschman Steel Company $17,464.69, the result of overpayments made by defendant for scrap steel purchased from the railroad during the previous year.

Subsequent to June 21, various trustees, including plaintiffs, were appointed by the federal court to operate and maintain the Penn Central as a viable transportation service. Among the actions taken by the trustees was the rejection of defendant's debit memoranda totaling 17,464.69. In spite of this rejection, defendant continued to do business with the railroad under the bankruptcy reorganization structure and, during the post-reorganization year of 1972, ordered from

the trustees a quantity of scrap steel having a market value of $17,464.69. This steel was delivered; however, payment was never received and four years later plaintiffs filed the present action to recover the full amount, plus interest.

A somewhat similar fact situation gave rise to the cause of action in *Baker, v. Gold Seal Liquor, Inc., supra.* In that case, the Penn Central trustees brought suit against Gold Seal for post-reorganization freight charges totaling $8,256.61. Gold Seal attempted to set-off against these freight charges part of a $19,319.02 claim (a figure which represented damage to, and loss of, its products during shipment on the post-reorganization Penn Central rail line). In denying Gold Seal's attempted set-off, the United States Supreme Court noted the unfairness of allowing a preference to the claim of one Penn Central creditor simply because it owed plaintiffs freight charges, and noted further the importance of protecting the railroad's cash inflow in order to insure its survival.

Although the fact situation herein differs from Gold Seal in that Tuschman Steel Company's attempted set-off involved a pre-organization (rather than post-reorganization) claim, such difference does not render the reasoning of *Gold Seal* inapplicable. In the case before us, there was clearly an effort by defendant to avoid paying a valid post-reorganization debt by setting off against it a pre-reorganization claim. It is our opinion that this attempted set-off constituted an effort by defendant to circumvent that portion of the Penn Central's reorganization plan which established creditor priorities. Further, we believe that this attempted set-off was clearly at odds with the primary purpose of Section 77, in that defendant sought to deny much needed funds to a large railroad line, the financial status of which was already the subject of much national concern, and the continuing operation of which was—and is—very much in the public interest.

In keeping with the principles set forth in *Gold Seal, supra,* and for the reasons expressed above, this court holds that defendant's attempted set-off and counterclaim constituted an effort to frustrate the purpose of Section 77 of the Bankruptcy Act.

The lower court did not err in rendering judgment in

favor of the plaintiff trustees. Defendant's assignments of error are found not well taken.

On consideration whereof, this Court finds that substantial justice has been done the party complaining. The judgment of the Lucas County Common Pleas Court is affirmed.

*Judgment affirmed.*

POTTER, P. J., and BROWN, J. concur.