**Emilio NARANJO, Plaintiff,**

v.

**COUNTY OF RIO ARRIBA, STATE OF NEW MEXICO; Rio Arriba Board of County Commissioners: Arthur R. Rodarte, individually and in his official capacity; Alfredo L. Montoya, individually and in his official capacity; and Ray R. Tafoya, individually and in his official capacity, Defendants.**

**Civ. No. 93–1269 JC/DJS.**

United States District Court,
D. New Mexico.

July 28, 1994.

Michael E. Vigil, Marchiondo & Vigil, P.A., Albuquerque, NM, for plaintiff.

Richard Rosenstock, David F. Cunningham, White, Koch, Kelly & McCarthy, P.A., Santa Fe, NM, for defendants.

## MEMORANDUM OPINION

CONWAY, District Judge.

THIS MATTER came on for consideration of the Defendant's Motion to Dismiss, filed November 2, 1993, Plaintiff's Motion to Dismiss Amended Counterclaim, filed December 23, 1993, and Third–Party Defendant's Motion to Dismiss for Lack of Jurisdiction, filed March 8, 1994. The Court has reviewed the motions and memoranda submitted by the parties, and heard oral argument on Friday, July 8, 1994 at 9:00 a.m.

At the July 8, 1994 hearing, the Court took under advisement a portion of Defendants' motion to dismiss, as well as Plaintiff's Motion to Dismiss. This memorandum will address only those issues taken under advisement. The remainder of the motions shall be disposed of for the reasons set forth on the record. For those reasons set forth on the record, and for the further reasons set forth herein, the Court finds that: Defendant's Motion to Dismiss is well-taken, and will be granted, Plaintiff's Motion to Dismiss Amended Counterclaim is not well-taken, and will be denied, and Third–Party Defendant's Motion to Dismiss for Lack of Jurisdiction is well-taken and will be granted.

## I. BACKGROUND

Emilio Naranjo filed this action in state court against the County of Rio Arriba, the Rio Arriba Board of County Commissioners, Arthur R. Rodarte, Alfredo L. Montoya and

Ray R. Tafoya. Defendants removed the action to this Court on October 23, 1993.

Plaintiff's allegations arise out of a lease agreement which Plaintiff contends was improperly terminated by the Defendants. The lease agreement pertained to an office building, owned by Naranjo, and under lease to the County of Rio Arriba. The County entered into an agreement with Naranjo, while he was employed as Rio Arriba County Manager, to lease the building to house the County's offices. The original lease was signed on November 7, 1990, and ran for a period of ten years.

During an internal audit conducted for the fiscal year ending June 30, 1991, the auditors found that the lease was probably illegal. The auditors finding was largely based on a written opinion of then New Mexico Attorney General, Hal Stratton. In their report, the auditors recommended that the lease be renegotiated to comply with the Attorney General Opinion. Naranjo and the County, through then Rio Arriba County Attorney James Nobel, renegotiated the lease, and several modifications were made by way of an addendum to the lease.

Defendants claim this addendum made three significant changes to the lease, namely, 1) the lease term was changed from 10 years to 8 years; 2) a provision was added which would allow the lease to be voided in the event of non-allocation of funds; and 3) a provision was added which would allow the County to cancel the lease at will, and without penalty, at the end of any fiscal year. This addendum was signed by Emilio Naranjo, before a Notary Public, on January 31, 1992. The addendum, however, was apparently never taken before the County Commission. While it is not clear why the addendum was never presented to the Commission for a vote, the Defendants contend that Nobel opined that a vote was not necessary because the addendum did not give rise to any additional duty on the part of the County.

Defendants claim that after the elections, when it became clear to Naranjo that his political affiliates had lost control of the County Commission, Naranjo had Nobel draft yet another addendum to the lease which eliminated the provision allowing the County to terminate the lease at the end of any fiscal year. The new addendum was apparently brought before the Commission, and was approved by a vote of 2 to 1, with Defendant Rodarte casting the only vote in opposition. Nobel allegedly never told the Commission that a previous, and more favorable, addendum had been signed. The new lease addendum was therefore approved on July 31, 1992. In addition to the new terms, the monthly rental on the property was increased from $1800 to $2000.

As stated previously, Arthur Rodarte was the only dissent in the vote to approve the new lease addendum. Rodarte served as a County Commissioner from January 1, 1991 to December 31, 1992 when he lost his bid for re-election. However, the majority of the Commission—consisting of Alfredo Montoya and Ray Tafoya, both of whom are defendants in this action—voted to hire Rodarte as the County Manager beginning January 1, 1993. Thus, not only had a political faction opposing Naranjo gained control of the County Commission, but, in addition, the County Commission displaced Naranjo's hand-picked successor as County Manager and hired a new County Attorney.

Shortly after taking office, Rodarte started looking for new quarters to house the County offices. He was of the view that the lease was invalid as set forth by the Attorney General Opinion, and believed that the County needed more adequate office space. According to the Defendants, the Naranjo Building was a woefully inadequate facility for housing the County offices. The building lacked adequate parking, and therefore visitors to the County offices had to rely on the generosity of neighboring landowners in parking their vehicles. In addition, the only parking for employees was a dirt lot, which presented problems during rain and snow storms. The Defendants also claim that the office space was too small, resulting in crowded conditions, including the placement of file cabinets in the hallways.

Defendants also allege that the terms of the lease agreement were detrimental to the County, and far too beneficial to Naranjo.

They claim the terms of the lease agreement were unconscionable, even purporting to require the County to indemnify Naranjo for acts of his own negligence. They further claim that Naranjo did not keep the property in good repair, and that those capital improvements which were made had to be paid for by the County. More adequate office space was apparently available at a more economical price, and under terms far more beneficial to the County.

Essentially, this is a state law claim for breach of contract in which the parties have chosen to raise federal constitutional questions. The Defendants claim that the lease was void as contrary to law, and that it was therefore terminable at the will of the County. Naranjo, on the other hand, claims, along with various state tort law theories, that his constitutional rights were violated because of his political beliefs.

Defendants have counterclaimed against Naranjo under various theories, accusing Naranjo of numerous improprieties, many of which only loosely relate to the primary cause of action. Defendants have cross-claimed against Nobel, claiming essentially that he engaged in improper conduct during the negotiation of the lease by representing Naranjo's interests rather than the interests of the County.

## II. DUE PROCESS CLAIM

■ Defendants, in section II.C. of their motion to dismiss, ask this Court to dismiss Plaintiff's claims under the Due Process Clause. Initially, Defendants addressed Plaintiff's claim purporting to show a violation of a protected liberty interest. Plaintiff, however, ignored the liberty interest claim, and instead argued that he had been deprived of a property interest without due process of law. The Court dismissed Plaintiff's liberty interest claim at the hearing, but took the motion to dismiss the procedural due process claim under advisement. Of course, a procedural due process claim may not exist without a corresponding property interest, and therefore the Court must necessarily address whether the lease created a property interest for Naranjo.

The property interest question turns on the legality of the lease under state law. Property interests do not arise naturally under the United States Constitution, but rather are created as a product of state law. Thus, the Court must examine whether the lease created a legitimate claim of entitlement, or, in contrast, was void as in violation of law.

Former New Mexico Attorney General Hal Stratton issued an opinion, dated October 31, 1988, wherein, after a thorough discussion of the relevant law, he concluded that a long term contract violated the New Mexico Constitution.

Paragraphs 3, 9 and 11 of the Agreement are attempts by the Commission to bind itself and future boards beyond the current fiscal year. For example, Paragraph 3 requires six months notice of the county's intent to not renew the contract. Paragraph 9, the termination clause, provides a severe penalty for termination without cause. Furthermore, Paragraph 11 contains a so-called "non-substitution" clause which prohibits the county from hiring a new county manager if it terminates the contract for lack of funds.

These provisions, in our opinion, coerce the current and future commissions to continue the contract for its entire term, and effectively eliminate their right to "recede without involving any financial liability in so receding" as required by *Trujillo*. They indicate that the county, by entering into this agreement, has contracted a debt in the constitutional sense.

. . . .

Because we have no indication that this debt was ever submitted to the voters for approval, the agreement is void. The commission must have the full discretion to not make funds available in any subsequent fiscal year to continue with the agreement.

. . . .

For consideration during future contracting, please be advised that a majority of jurisdictions recognize the common law rule that presently constituted local governing bodies may not bind their succes-

sors in office. If the contract addresses legislative or governmental functions or individual discretionary matters, a governmental body cannot bind future commissions unless a statute specifically authorizes it to do so.

Op.N.M.Att'y Gen., No. 88–67 at 5–6 (October 31, 1988). Likewise, the lease at issue in the present case purports to bind future Rio Arriba County Commissions. The non-appropriations clause in the contract is very limited, because, by the Plaintiff's own admission, the only way Rio Arriba County can ever get out of the lease prior to its expiration is to build its own building. *See* Lease Attachment # 3, Attached as Exhibit 1 to Plaintiff's Complaint,

> In the event no funds or insufficient funds are appropriated and budgeted or are otherwise not available in any fiscal year of the Lease for rental payments due under this Lease, this Lease shall termination on the last day of the fiscal year for which appropriations were received without penalty or expense to the Lessee. Lessee agrees that it will not cancel the Lease under the provisions of this Section if any funds are appropriated by or for the acquisition, retention or leasing of buildings to house County business officers [sic] for the fiscal year in which termination occurs.

The County may not terminate the lease at will, and the non-appropriation clause is so limited that it leaves future County Commissioners with little choice but to maintain lease payments. As set forth by the Supreme Court in *State Office Bldg. Comm'n v. Trujillo,* 46 N.M. 29, 49, 120 P.2d 434 (1941),

> The cases cited hold that a lease for a term of years for use of property by a city, school district, etc., which does not involve purchase of the property leased and the yearly rental under which can be met within the constitutional limits of annual indebtedness, and wherein such city, etc., may at any time recede without involving any financial liability in so receding, is valid. This is based on the idea that the service charges by the lessor are earned only year by year. The same has been held as to a state or state institution if the annual rental is to be met by legislative

appropriation. Under such an arrangement, the city, etc., is not legally bound to continue payments of rentals, or to raise money therefor.

The lease agreement at issue permits the County only two viable options, 1) continue the lease, or 2) build a building. These provisions are so restrictive that they cannot be read to meet the standard set out by the New Mexico Supreme Court. Under the lease terms, the County does not have the option to "recede without involving any financial liability," and therefore the lease constitutes debt as set forth in the above cited Attorney General Opinion.

Based on the case law presented by the parties, and the Attorney General Opinion, a state court would undoubtedly find that such debt was in violation of the New Mexico Constitution. Therefore, at minimum, the lease could not be enforced in the courts of New Mexico. An unenforceable lease cannot be viewed as creating a property interest in Naranjo, and the Court finds, therefore, that Defendants' motion to dismiss the Due Process claim is well-taken, and shall be granted.

### III.   AMENDED COUNTERCLAIM

#### A.   *Standing*

█ Plaintiff's initial argument for the dismissal of the Amended Counterclaim (Counterclaim) is based on Rio Arriba County's supposed lack of standing to sue. The Plaintiff cites two Tenth Circuit cases for the proposition that a political subdivision lacks standing under 42 U.S.C. § 1983 to sue another political subdivision of the same state. *See Housing Authority v. City of Ponca City,* 952 F.2d 1183 (10th Cir.1991); *City of Moore v. Atchison, Topeka & Santa Fe Railway Co.,* 699 F.2d 507 (10th Cir.1983).

Bearing in mind that the Court is presented with a motion to dismiss rather than a motion for summary judgment, the Court finds Plaintiff's argument unpersuasive. Assuming all of the Counterplaintiffs' allegations to be true, Naranjo is being countersued largely based on an alleged conspiracy to deprive the County of funds through a series of self-dealing transactions. As such, the County is not, in practice, counter-suing

itself. Therefore, this case is not within the scope of the Tenth Circuit opinions cited above, but is closer in nature to *Santiago Collazo v. Franqui Acosta,* 721 F.Supp. 385, 388–89 (D.P.R.1989), wherein the district court stated,

> The complaint in this case alleges that, between program years 1985–88, the Municipality of Vieques, under a New Progressive Party (NPP) administration, has received less money under the HCDA than other comparable municipalities administered by the Popular Democratic Party (PDP). This alleged economic loss clearly constitutes a "threatened or actual injury." "These palpable economic injuries have long been recognized as sufficient to lay the basis for standing." Discrimination on the basis of the political affiliation of the municipal administration, within the "zone of interests" protected by the first amendment, is alleged as the cause of injury, thus making it "fairly" traceable to the challenged action.

(citations omitted). Likewise, the County appears to have standing to sue in this matter based on the alleged economic loss caused by Naranjo.

## B. Constitutional Claims

Plaintiff's second contention is that Counter–Plaintiffs' constitutional claims must fail because, "There is no constitutional right on the part of the county commissioners to 'expend' County funds and hire personnel" to "competently serve the citizens of Rio Arriba" or to "be re-elected." *Plaintiff's Memorandum of Points and Authorities in Support of Motion to Dismiss* at 2. Once again bearing in mind that the Court is presented with a motion to dismiss, the Court finds that the Plaintiff's argument is unpersuasive.

While it is not clear that Counter–Plaintiffs will ultimately be able to show a nexus between the allegedly unconstitutional behavior and a cognizable injury, it is clear that Counter–Plaintiffs have potentially plead a constitutional deprivation. *See e.g. Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972),

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable government benefit and even though the government may deny him benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." Such interference with constitutional rights is impermissible.

(citations omitted). Having plead a potentially cognizable claim, the Defendants are entitled to maintain the action at this juncture.

## C. Paragraph 29

Plaintiff next asserts that paragraph 29 of the Amended Counterclaim fails to state a cause of action against Naranjo. While the Court agrees that Counter–Plaintiffs have not shown standing to sue on any of the acts enumerated in paragraph 29, Counter–Plaintiffs have alleged a conspiracy theory, and have set forth these acts as evidence of the conspiracy. Since the Counter–Plaintiffs' claims will be permitted to continue, the Court finds no reasons to strike the paragraph at this point.

## D. Supplemental Jurisdiction

Plaintiff's final contention is that the Court should strike the Counter–Plaintiffs' state law counterclaims which were brought under the Court's supplemental jurisdiction. This argument, however, is primarily conditioned upon the dismissal of the jurisdictionally conferring claims by the Court. Because the Court has not dismissed the jurisdictionally conferring claims, the only issue remaining for discussion is whether the claims fall within the scope of the supplemental jurisdiction statute.

█ The supplemental jurisdiction statute, 28 U.S.C. § 1367(a) provides in relevant part,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so

related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

For a counterclaim to be "so related to claims in the action ... that they form part of the same case of controversy," and therefore fall within the Court's supplemental jurisdiction, it must be a compulsory rather than a permissive counterclaim. *See Unique Concepts, Inc. v. Manuel,* 930 F.2d 573, 574 (7th Cir.1991) ("A federal court has supplemental jurisdiction over compulsory counterclaims. Permissive counterclaims, however, require their own jurisdictional basis.") (citations omitted); *N.L.R.B. ex rel. International Union of Electrical, Radio & Machine Workers, etc. v. Dutch Boy, Inc., Glow Lite Div.,* 606 F.2d 929, 932 (10th Cir.1979).

■ Federal Rule of Civil Procedure 13(a) requires that,

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

A party who fails to raise a compulsory counterclaim is subsequently barred from asserting the claim in a later proceeding. *See e.g., Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974).

■ The state law counterclaims set forth by the Counterplaintiffs appear to arise directly out of the lease agreement, and therefore constitute compulsory counterclaims. This Court shall therefore maintain jurisdiction over said claims.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff has failed to show a property interest in the lease, and therefore may not maintain his claim for a denial of proce-

dural due process. In addition, the Court finds that Plaintiff's motion to dismiss fails to carry its burden under Fed.R.Civ.P. 12(b)(6), and shall therefore be denied. The remaining issues shall be disposed of as set forth at the July 8, 1994 hearing.

An order in accordance with this opinion shall be entered.