**Paul HERRMANN et al., Plaintiffs,**

**v.**

**ATLANTIC RICHFIELD COMPANY, a corporation, Defendant.**

**Civ. A. Nos. 71–842, 73–799.**

United States District Court,
W. D. Pennsylvania.

Oct. 15, 1976.

Paul H. Titus, Kaufman & Harris, Daniel J. Beggy, Mansmann, Beggy & Campbell, Louis Kwall, Lebovitz, Lebovitz & Kwall, Robert Ivan Johnston, Pittsburgh, Pa., for plaintiffs.

David J. Armstrong, M. Richard Dunlap, Dickie, McCamey & Chilcote, Pittsburgh, Pa., Harry W. Gill, Jr., Philadelphia, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

These consolidated antitrust actions are presently before the Court for resolution of two important procedural matters raised by defendant Atlantic Richfield Company (ARCO).

Specifically, ARCO has moved (1) for an order decertifying the plaintiff class previously certified by this Court pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure,[1] and (2) for leave to file a supplemental answer setting forth twenty-

---

1. See *Herrmann v. Atlantic Richfield Company*, 65 F.R.D. 585 (D.C.Pa.1974) in which the complex history of these cases is summarized.

one counterclaims against various absent members of the plaintiff class.

It is apparent that disposition of these motions will determine the essential character of this protracted litigation; the Court has considered them accordingly, carefully weighing the arguments raised in the various briefs filed by the parties. For reasons stated below, ARCO's motion to decertify the class will be denied; its motion to file counterclaims will be granted in part and denied in part.

### The Motion to Decertify the Class

■ Defendant's motion to decertify the instant case as a class action is based on the allegedly fatal convergence of two factors: a stipulation of the parties refining the issues in this suit and the recent decision of the Court of Appeals for the Third Circuit in *Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211 (1976).

In *Dunkin' Donuts, supra,* the Court of Appeals held that the *"predominance requirement"* of Rule 23(b)(3) precluded certification of a plaintiff class asserting antitrust tying claims. The court reasoned that inasmuch as proof of coercion is an essential element of a prima facie case of illegal tying, each class member would be required to establish individual coercion—that is, that he, individually, was coerced into accepting certain alleged tie-in sales.[2] Thus, the Court ruled, questions common to the members of the class could not be deemed to predominate over questions affecting individual members, as required under Rule 23(b)(3). Class action certification therefore was improper.

The case presently before this Court does not involve allegations of illegal tie-ins on the part of the defendant corporation. Rather, plaintiffs in these actions charge violations of Section 1 of the Sherman Act (15 U.S.C. § 1). Nonetheless, ARCO submits that a stipulation filed by the parties herein (and approved by the Court on Sep-

tember 8, 1975) renders the case *sub judice* fully subject to the *Dunkin' Donuts* rationale.

The stipulation in question provides as follows:

"2. The substantive offenses alleged by plaintiffs in both of the above captioned cases shall be withdrawn as to all allegations of violations of the Robinson-Patman Act, 15 U.S.C. §§ 13 et seq., and all allegations of violations of the Sherman Act, 15 U.S.C. §§ 1 and 2 with two exceptions. The two allegations that remain are those specified in the Notice of Pendency of Class Action sent to the members of the class on April 10, 1975, wherein they were stated as follows:

'whether ARCO coerced its dealers into

(a) buying and issuing trading stamps, and

(b) selling petroleum products at prices established by ARCO.'"

ARCO contends that the above language has reduced this litigation to two questions of dealer coercion, and that each dealer/class member therefore must prove coercion in order to recover from defendant. This, ARCO submits, posits a predominant individual question, creating precisely that circumstance in which the *Dunkin' Donuts* court deemed class certification improper.

I do not agree. While defendant's argument is attractive at first blush, closer analysis indicates that the instant situation is fundamentally different from that which pertained in *Dunkin' Donuts.*

Unlike *Dunkin' Donuts,* the crux of this case is whether ARCO violated Section 1 of the Sherman Act by fixing prices and otherwise tampering with the retail price structure for petroleum and petroleum products. While the parties have stipulated that the issue to be tried is "whether ARCO coerced its dealers into (a) buying and issuing trading stamps and (b) selling petroleum products at prices established by

---

**2.** In *Dunkin' Donuts,* plaintiff franchisees challenged the franchisor's purported tying of equipment, signs, real estate and supplies to the grant of a license to use the Dunkin' Donuts trademark.

ARCO," proof of individual coercion clearly is not essential to establish the antitrust violation alleged by plaintiffs. All that need be shown in order to demonstrate the asserted violation of Section 1 of the Sherman Act is that defendant conspired, agreed or combined with some of its dealers in an effort to affect the retail price of gasoline or associated products. See *Albrecht v. Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

■ Apparently, the question of coercion has been emphasized in this case because coercion is the alleged means by which ARCO purportedly secured the agreement of many of its dealers to maintain established retail prices and to buy and issue trading stamps. But it is in no way necessary for each dealer/class member to demonstrate that he, individually, was subject to coercion by the defendant corporation. Indeed, as plaintiffs observe, some dealers may have agreed voluntarily to carry trading stamps or to sell petroleum at a price level desired by ARCO. This still would constitute a violation of the Sherman Act, and, at least insofar as such dealers did not aggressively support and further the averred monopolistic scheme, they are not barred from recovery because their agreement was voluntary. See *Perma Life Mufflers v. International Parts Corp.,* 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968).

In these circumstances, the principle enunciated in *Dunkin' Donuts* provides scant support for defendant's motion to decertify.

### The Motion For Leave To File Counterclaims

As previously noted, ARCO also has moved the Court for permission to file a supplemental answer asserting twenty-one counterclaims against various members of the plaintiff class.

These counterclaims are of two types: eleven of them are so-called debt collection claims, seeking affirmative judgment against certain individual class members for monies allegedly owing defendant on open account; ten seek set-offs against various individuals which would allow ARCO to reduce the amount of any monetary damages awarded to a particular class member by the unpaid balance of an outstanding judgment against that class member.

■ With regard to the first group of counterclaims which defendant seeks to assert in this forum, extended discussion is altogether unnecessary in light of this Court's recent Opinion in *Zeltzer v. Carte Blanche Corp.,* 414 F.Supp. 1221 (W.D.Pa. 1976). For the reasons set forth therein, I consider that the eleven counterclaims seeking affirmative judgments and amounting to no more than state debt collection suits should properly be deemed permissive under F.R.Civ.P. 13(b). Accordingly, in the undisputed absence of an independent basis of federal jurisdiction, these counterclaims will be disallowed. ARCO is of course perfectly free to pursue them in state court.

■ The second set of counterclaims asserted by defendant stand on a different footing. These ten claims are in the nature of set-offs, employed defensively to reduce the amount of an opposing party's recovery rather than as the basis for any affirmative relief. Thus, while the Court is inclined to characterize these counterclaims as permissive under the rationale of *Zeltzer v. Carte Blanche Corp., supra,* they fall within the "defensive set-off" exception to Rule 13(b) and may be asserted in the federal forum despite the absence of an independent jurisdictional basis. See 6 Wright & Miller, *Federal Practice & Procedure,* Civil § 1422 (1971).

As the district court explained in *Marks v. Spitz,* 4 F.R.D. 348, 350 (D.Mass.1945):

"Where the counterclaim is in the nature of set-off, and is used defensively rather than affirmatively, no separate federal jurisdictional basis for the set-off need be established. . . . It is a counter-demand which a defendant has against the

plaintiff arising out of a transaction extrinsic to that out of which the primary claim arose. . . . The claim must be liquidated or capable of liquidation and grow out of a contract or judgment." (citations omitted)

Inasmuch as the ten set-off counterclaims presently at issue are for the outstanding balances of previously-filed unsatisfied judgments against individual members of the plaintiff class, they may be asserted in the instant action.

It should be emphasized in closing that the Court has not failed to recognize or consider, *inter alia,* plaintiffs' argument that absent members of a certified class are not "opposing parties" within the meaning of F.R.Civ.P. 13 and therefore are not subject to counterclaim, whether in the nature of defensive set-off or otherwise. Moreover, I am fully aware that the courts which have faced this question have reached disparate results. Compare, e. g., *Weit v. Continental Illinois National Bank and Trust Co.,* 60 F.R.D. 5 (N.D.Ill.1973), with, e. g., *Donson Stores, Inc. v. American Bakeries Company,* 58 F.R.D. 485 (S.D.N.Y. 1973).

■ In the final analysis, however, I am persuaded that at least where, as here, the class action is compact and well-defined, each class member having been identified by name and those against whom counterclaims are asserted having been individually notified and given an opportunity to opt out, the better view is that class members who file claims become "parties" subject to counterclaim under Rule 13. Whatever merit there may be in the theory that "[c]ounterclaims will induce absent members to exclude themselves from the class to the extent that the members are unwilling or unable to assume the burden of defending against the counterclaims or are frightened by them," thus purportedly undermining the integrity of the class action device (Note, 87 *Harvard L.Rev.* 470, 474 (1973)), it is in my judgment outweighed by the inherent fairness of the proposition that those who choose to join in a lawsuit and assert claims against a defendant must be prepared to accept the legal risks and consequences of their voluntary choice. In stark and simple terms, one who throws a punch ought to be ready to receive one in return.

That a defendant will counterclaim is an entirely normal risk of bringing and prosecuting a lawsuit. The absent members of the instant class may not have brought this suit against ARCO, but they have decided to become a part of it in order to reap the benefits of any possible recovery. Depriving defendant of its right to assert otherwise viable counterclaims against such class members by affording them some special species of immunity is, in my view, too high a price for fostering all-inclusive plaintiff classes under Rule 23.

An appropriate Order will be entered in accordance with this Opinion.

## ORDER

AND NOW, to-wit, this 15th day of October, 1976, in consideration of the foregoing Opinion in the above-captioned case, IT IS ORDERED that defendant's motion to decertify the plaintiff class previously certified by the Court be and the same is hereby denied.

IT IS FURTHER ORDERED that defendant's motion for leave to file supplemental answer and counterclaims be and the same is hereby granted insofar as it relates to counterclaims 1, 3, 5, 6, 10, 11, 14, 16, 18 and 20 set forth in said supplemental answer. In all other respects, defendant's motion is denied.