**Neil DINCES, Esquire**

v.

**Thomas ROBBINS, Gary Robbins, Music Magazine Foundation for Education & Communication, Inc., and GRAC, Inc.**

v.

**Michael W. UNTERMEYER.**

**Civ. A. No. 84–4430.**

United States District Court, E.D. Pennsylvania.

March 13, 1985.

Cletus P. Lyman, David Huyett, Philadelphia, Pa., for plaintiff.

Charles G. Resnick, Philadelphia, Pa., for defendants.

Cletus P. Lyman, Philadelphia, Pa., for third-party defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are (1) defendants' motion for summary judgment on plaintiff's complaint, (2) plaintiff's motion to enlarge time to oppose summary judgment, (3) plaintiff's motion to strike certifications of Gary Robbins and Thomas Robbins, (4) plaintiff's motion to dismiss defendants' counterclaim, (5) third-party defendant's motion for summary judgment on defendants' third-party complaint, and (6) defendants' motion for summary judgment on third-party defendant's counterclaim. For the reasons stated herein, defendants' motion for summary judgment on plaintiff's claim will be granted.

## I. FACTS

In December, 1982, defendant Thomas Robbins and third-party defendant Michael Untermeyer founded Music Magazine Foundation for Education and Communication, Inc. ("Music Magazine") and Michael Untermeyer Syndications, Inc. for the purpose of producing a television show which would consist of music videos made by record companies. Robbins was Music Magazine's president. Untermeyer was the venture's attorney. Untermeyer also arranged broadcasts of Music Magazine's television show with television stations. Music Magazine's show was called the "Houghton/Worth Show, A Music Magazine."

In May, 1983, some of Untermeyer's family members and friends, after being solicited by Untermeyer, invested money in

Music Magazine. The plaintiff Neil Dinces was among those whom Untermeyer solicited. Dinces invested $2500.00 in Music Magazine on May 1, 1983. As evidence of that investment, Robbins, on behalf of Music Magazine, gave a note promising to pay Dinces $2500.00 at 18% interest per annum on or before December 31, 1983. Subsequently, on May 6, 1983, Robbins, on behalf of Music Magazine, signed a letter of intent with respect to Dinces' investment in Music Magazine. That letter provided in pertinent part:

> You shall make a loan to the Music Magazine Foundation for Education and Communication, Inc. (hereinafter referred to as "Foundation"), in the amount of Two Thousand Five Hundred ........ Dollars, on or before May 1, 1983. The loan shall be paid in full on or before December 31, 1983, by the Foundation, with simple interest due and payable on that date at the rate of one and one-half (1½%), percent per month for a total payment of $2,500 + $300.00 = $2,800.00. In the event that the loan is paid in full prior to December 31, 1983, the amount repaid shall be adjusted so that the money earns interest at a monthly rate of one and one-half (1½%) percent per month.

> .    .    .    .    .

> After the principal amount of your investment has been repaid, you may, in lieu of receiving interest, elect to receive ¼% (one quarter) percent (sic) of all gross receipts received by the Foundation for the sale of time in The Houghton/Worth Show, A Music Magazine. In the event that you make this election, you shall be entitled to ¼% (one quarter) percent (sic) of the gross receipts of The Houghton/Worth Show, A Music Magazine, for its original term (26 weeks) and for all renewals of it as a once-a-week barter show.

> In the event that your loan is not repaid on or before December 31, 1983, the due date of your note, you may conclude that the show has not been successful and you may elect either to grant an extension to the Foundation for repayment of

the loan at a later date, with interest continuing to accrue at the rate of one and one-half (1½%) percent per month, or to request a letter from the Foundation stating that the debt will not be repaid and you should be entitled to a bad debt deduction from your federal income taxes for the entire amount of the loan.

Music Magazine did not pay principal or interest on or before December 31, 1983. Thereafter, on January 16, 1984, plaintiff, by letter, inquired as to the status of his loan and the condition of Music Magazine. In particular, plaintiff sought a statement from Music Magazine's accountants setting forth the company's prospects and a statement from Robbins as to the company's need for loan extensions.

Defendants' attorney responded in a letter dated January 31, 1984, on behalf of, the court presumes, all of the defendants. Defendants did not seek an extension on plaintiff's loan, but, instead, tendered to plaintiff a check for the principal amount owed plus 1½% per month computed on the remaining outstanding principal balance effective through the date on which the check was drawn. On the check were written the words "payoff of loan." In a letter accompanying the check, defendants set forth their expectations with regard to this check:

> In review of your demand for payment, the Foundation has elected to satisfy your obligation in full at this time rather than request an extension as has been done with other creditors. Please find enclosed herewith a Music Magazine Foundation for Education and Communication, Inc. check in the amount of $2066.64 as your full and final payment in satisfaction of the loan made April 30, 1983 which was greatly appreciated and for which we deeply thank you. You will note that the amount of the check exceeds the amount of the principal balance remaining due to account for the additional interest to which you are entitled at the rate of 1½% per month computed on the remaining outstanding principal

balance effective through the date this check is drawn.

Plaintiff deposited the check.

Subsequently, on February 28, 1984, plaintiff wrote defendants seeking to exercise his "option to receive ¼% (one quarter) percent (sic) gross receipts...."

Defendants refused to honor plaintiff's election. Defendants' position is that at some time prior to February 28, 1984, plaintiff's option terminated.

## II. DISCUSSION

1. Plaintiff's motion to strike certifications of Gary Robbins and Thomas Robbins will be denied as moot: Gary Robbins and Thomas Robbins have remedied the defects of which plaintiff complains.

■ 2. Plaintiff's motion to enlarge time to oppose summary judgment will be denied. Plaintiff's answer was due January 17, 1985. Plaintiff has still not filed an answer within 25 days since January 17, 1985. The court believes that the time allowed under the Federal Rules of Civil Procedure plus 25 days granted by the court is more than enough time for plaintiff to respond to defendants' motion. It must be noted, however, that plaintiff argued the motion to dismiss in a court hearing on January 22, 1985.

3. Defendants' motion to dismiss.

■ The issue before the court is whether plaintiff had the option, in addition to retaining the 18% interest payment, to elect to receive .25% of Music Magazine's gross receipts on February 28, 1984. Resolution of this issue turns on the nature and extent of plaintiff's contractual rights as set forth in the May 6, 1984 letter of intent.

That letter characterized plaintiff's original status as that of a lender. If plaintiff did nothing, he had the right to receive his principal amount plus 18% interest per annum on or before December 31, 1983. The letter, however, also gave plaintiff two options by which plaintiff could alter, modify, or amend his status as a lender and remain

a lender entitled to interest or become an investor and forgo it.

Plaintiff argues that on February 28, 1984, as set forth in the letter of intent, he possessed two options which were independent of each other and provided two separate benefits, one to follow the other. Plaintiff construes those options as follows. The first option (hereinafter referred to as the "default option") provided that when Music Magazine failed to repay the loan on or before December 31, 1983, he had the choice to either grant an extension to Music Magazine for repayment of the loan at a later date with interest continuing to accrue at the rate of one and one-half (1½%) percent per month, or the choice of requesting a letter from Music Magazine stating that the debt would not be repaid and that he would be entitled to claim a bad debt deduction from his federal income taxes for the entire amount of the loan. The second option (hereinafter referred to as the "repayment option") was that after Music Magazine repaid the principal amount on his loan, he could elect to forgo the payment of interest on that principal and receive instead one-quarter (¼%) percent of the gross receipts received by Music Magazine for the sale of time in The Houghton/Worth Show, A Music Magazine for its original term (26 weeks) and for all renewals of it as a once-a-week barter show. Plaintiff argues from this analysis that he had the right to receive principal and interest under the default option until such time as the principal was paid and, thereafter, principal as well as percentage of future gross receipts in place of interest on his $2500.00 loan.

While the loan document suggests that the failure to repay the $2500.00 principal by December 31, 1983, was a basis that would cause plaintiff to conclude the show was a failure which renders plaintiff's expectation of future profits of questionable reasonableness, that phrase is not the controlling feature of this dispute, although it lends weight to the defendants' position.

The court concludes that under the default option, the plaintiff did not have two

choices, but had three. The first was at the time of the default on December 31, 1983, when the principal payment was not made by the defendants, the plaintiff could have granted an extension for the repayment that would carry with it interest at one and one-half (1½%) percent per month. The second choice was to request a letter from the defendant suggesting that the plaintiff could seek a bad debt deduction on his federal income tax return. The third choice the plaintiff had at this time was to do nothing. That is, plaintiff could neither expressly grant any form of extension for repayment nor request a letter for the Internal Revenue Service.

What actually happened was he made inquiry about the status of the loan and after some discussion with the defendants he elected to receive, and he did receive, payment on February 1, 1984, of the balance of principal due him, together with interest to that date at the agreed rate. The defendants conclude that this was his election under the default option which he exercised and which the defendants honored in satisfaction of all obligations to the plaintiff. The plaintiff, on the other hand, concludes that in effect he simply was repaid his principal and interest and under the loan documents the instant the principal is repaid he had the right to claim a one-quarter interest in future gross receipts in lieu of interest on that principal loan.

It is unclear what the status of the parties was in the month of January, 1984, under the default option. It is likely that this month was an extension month that entitled the plaintiff to receive interest at the agreed rate, together with principal, which obligation was honored by the defendants on February 1, 1984. It is equally reasonable that the plaintiff simply pondered the matter for a brief time and ultimately the parties came to some understanding that the plaintiff was to receive principal plus interest for a one month additional period at the agreed rate, which payment was made on or about February 1, 1984.

The real difference between the plaintiff and the defendants is that the plaintiff believes his options are separate options that follow each other that gives him two cumulative claims, whereas the defendants' view is that the plaintiff can seek one or the other option, but not both. The court believes that the defendants are correct. This must be so because if at the time the principal is repaid the plaintiff is to receive a percentage of future profits in lieu of interest, the only interest that can be of sufficient consideration for the promise of a percentage of future gross receipts is either interest that has accrued or interest that will accrue. Inasmuch as the interest that had accrued to February 1, 1984, when the plaintiff was repaid his principal, was paid with the principal, the promise of future profits cannot be supported by a forgiveness of accrued interest. Also, inasmuch as the principal was repaid on February 1, 1984, there can be no principal to support an obligation to pay interest in the future. The plain meaning of what the parties agreed to can only be that when the principal was repaid on February 1, 1984, the plaintiff had a choice of either accepting interest at that time which had accrued on that sum, or allowing the defendants to keep that interest payment and promise in exchange to pay a percentage of future gross receipts. The plaintiff cannot have it both ways. He elected to receive and did accept the accrued interest and he received the principal as well. There was nothing left to forgo and accordingly his claim on future profits disappeared with his acceptance of principal and accrued interest to February 1, 1984.

The court holds that on February 28, 1984, plaintiff did not have the right to elect a percentage of gross receipts. Accordingly, defendants' motion for summary judgment will be granted.

4. Third-party defendant's motion for summary judgment on defendants' third-party complaint.

The third-party complaint will be dismissed. *Owen Equipment & Erection Co.*

*v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

5. Plaintiff's motion to dismiss defendants' counterclaim.

Defendants' counterclaim will be dismissed. *Baird v. Aluminum Seal,* 250 F.2d 595 (3d Cir.1957).

6. Defendants' motion for summary judgment on third-party defendant's counterclaim.

Third-party plaintiffs and third-party defendant had been parties in an earlier lawsuit in state court. That litigation had terminated in a settlement agreement, dated September 27, 1983, which was incorporated into the consent judgment of the state court. Under a provision in that agreement, third-party plaintiffs were required to pay third-party defendant 10% of gross receipts of Music Magazine's Houghton/Worth Show. According to third-party defendant, third-party plaintiffs evaded an accurate accounting by diverting business from the Music Magazine show to different shows. Thus, third-party defendant asserts a counterclaim against third-party plaintiffs for the percentage of gross receipts which he would have received but for third-party plaintiffs' impropriety. In his pleading, third-party defendant prays for the following relief:

WHEREFORE, Untermeyer demands judgment in his favor against defendants, jointly and severally, dismissing the third-party complaint and providing for an accounting of the Houghton/Worth Show by all its names and corporate affiliations, and awarding compensatory and punitive damages, and such other relief the court may deem appropriate, including interim relief, such as a preliminary injunction and the appointment of a receiver, and costs of suit.

Third-party plaintiffs have moved for summary judgment with respect to third-party defendant's counterclaim. In support of their motion, third-party plaintiffs assert three grounds: (1) this court does not have subject matter jurisdiction over the counterclaim; (2) the September 22, 1983, settlement agreement precludes the counterclaim; and (3) the doctrine of laches bars the counterclaim.

■ Whether this court has subject matter jurisdiction over the counterclaim depends upon the nature of the counterclaim. If, on the one hand, the counterclaim is a compulsory one, the court may have federal question or diversity subject matter jurisdiction or ancillary subject matter jurisdiction. *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974). If, on the other hand, the counterclaim is merely a permissive one, the counterclaim must, generally, be supported by an independent basis of subject matter jurisdiction. *Aldens, Inc. v. Packel,* 524 F.2d 38, 52 n. 21 (3d Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). Many courts have recognized an exception to the rule requiring an independent basis for jurisdiction in permissive counterclaims. *See Curtis v. J.E. Caldwell & Co.,* 86 F.R.D. 454 (E.D.Pa. 1980). Chief Judge Joseph S. Lord, III, who wrote the *Curtis* opinion, summarized this exception as follows:

Assertion of a defensive set-off is the one generally recognized exception to the rule that a permissive counterclaim requires an independent basis for jurisdiction. *United States v. Heyward-Robinson,* [430 F.2d 1077 (2d Cir.1970) ], *supra; Herrmann v. Atlantic Richfield Co.,* 72 F.R.D. 182, 185 (W.D.Pa.1976); 6 Wright & Miller, *Federal Practice & Procedure,* Civil § 1422 at 122 (1971). *But see, Robinson Brothers & Co. v. Tygart Steel Products Co.,* 9 F.R.D. 468 (W.D.Pa.1949). A defensive set-off may be asserted solely to defeat or diminish the adverse party's recovery, it must arise from a transaction extrinsic to the original claim, and it must be based on a contract or judgment and be capable of liquidation. *Binnick v. Avco Financial Services of Nebraska, Inc.,* 435 F.Supp. 359, 367 (D.Neb.1977); 3 Moore's Federal Practice ¶ 13.19(1) at 13–481.

86 F.R.D. at 457–458.

With this background in mind, the court turns to the initial question of whether

third-party defendant's counterclaim was a compulsory or a permissive one.

■ When a claim is filed against a party, that party may assert a counterclaim in its responsive pleading. If the counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot require jurisdiction," it is termed a compulsory counterclaim. Fed.R.Civ.P. 13(a). *See Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir.1961). If the counterclaim is not a compulsory counterclaim, it is a permissive one. Specifically, a permissive counterclaim is "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(b).

■ In this case, the court must compare the transactions or occurrences from which the third-party plaintiffs' claim against the third-party defendant arises with the transactions or occurrences from which the third-party defendant's claim against the third-party plaintiffs arises. Third-party plaintiffs allege in their complaint that if they are liable to plaintiff for breach of the contract, which was manifested in the May 6, 1983, letter of intent, then the third-party defendant, the attorney who drafted the letter of intent, is liable for contribution or indemnity to third-party plaintiffs. The court construes the third-party complaint to assert three theories of recovery for contribution or indemnity: (1) plaintiff and third-party defendant were friends and, thus, third-party defendant had a conflict of interest when he drafted the letter of intent. He acted on behalf of both parties to the contract—his client and his friend; (2) third-party defendant, and not defendant third-party plaintiffs, was responsible for any fraud perpetrated on the plaintiff; and (3) third-party defendant acted in violation of federal securities law.[1] In contrast, third-party defendant's counterclaim is that third-party plaintiffs failed to honor their obligations under the September 22, 1983, agreement of settlement. The transactions or occurrences of which the third-party defendant complains is breach of the settlement agreement by third-party plaintiffs. After comparing the transactions or occurrences of which the parties complain, the court determines that the claim asserted by the third-party defendant against the third-party plaintiffs does not arise out of a transaction or occurrence that is the subject matter of the third-party plaintiffs' claim against the third-party defendant. Third-party defendant's counterclaim is therefore a permissive counterclaim.

■ Since third-party defendant's counterclaim is a permissive one, the court must next consider carefully whether there is an independent basis of jurisdiction upon which the counterclaim may be entertained by this court. Since the third-party plaintiffs and the third-party defendant are citizens of Pennsylvania, this court cannot assert subject matter jurisdiction based on diversity. Also, this court cannot assume jurisdiction based on a federal question because third-party defendants' counterclaim is merely for breach of contract.

Having determined that this court has no independent basis upon which it can assert subject matter jurisdiction, the court turns finally to the exception to the general rule. The second and third requirements of the exception are met. Third-party defendant's claim is based on a contract. Also, as discussed above, third-party defendant's claim arises from a transaction extrinsic to the third-party plaintiffs' original claim of indemnity or contribution.

The first and fourth elements of the exception are not met here, however. First,

---

1. Defendants do not assert an independent claim that third-party defendant violated federal securities law. Defendants' assertion that third-party defendant violated federal securities law is merely a basis upon which they claim indemnity and contribution. It is, therefore, not a separate claim based on a federal statute upon which this court can assert federal question subject matter jurisdiction.

third-party defendant seeks an affirmative recovery and does not assert his claim solely to defeat or diminish third-party plaintiffs' recovery. It is not a mere set-off. The fourth element is, also, not met. Third-party defendant's claim is not liquidated and is not capable of liquidation without aid of evidence presented at trial. *Jones v. Sonny Gerber Auto Sales, Inc.,* 71 F.R.D. 695 (D.C.Neb.1976).

Accordingly, no basis of subject matter jurisdiction exists by which this court can assert jurisdiction over the third-party defendant's counterclaim. That counterclaim will be dismissed.

An appropriate Order will be entered.