Joseph SKARO, et al., Plaintiffs,

v.

EASTERN SAVINGS BANK, Defendant.

Civ. A. No. 93–0030.

United States District Court,
W.D. Pennsylvania.

Sept. 27, 1994.

John M. Silvestri, Pittsburgh, PA, for plaintiffs.

C. Andrew McGhee, Rose, Schmidt, Hasley & DiSalle, Pittsburgh, PA, Richard Zeskind, Hunt Valley, MD, for defendant.

## MEMORANDUM ORDER

LANCASTER, District Judge.

On June 15, 1994, this case was referred to United States Magistrate Judge Francis X. Caiazza for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)(1)(A) and (B), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

The magistrate judge's report and recommendation, filed on September 8, 1994, recommended that plaintiffs' motion for remand be denied. The parties were allowed ten (10) days from the date of service to file objections. Service was made on all parties and

no objections have been filed. After review of the pleadings and documents in the case, together with the report and recommendation, the following order is entered:

IT IS HEREBY ORDERED that plaintiffs' motion to remand (Doc. No. 23) is DENIED.

The report and recommendation of Magistrate Judge Caiazza, Document No. 34, dated September 8, 1994, is adopted as the opinion of the court.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

CAIAZZA, United States Magistrate Judge.

### I. RECOMMENDATION

It is recommended that plaintiffs' motion for remand at document #23 be denied.

### II. REPORT

#### Procedural History

Plaintiffs Joseph Skaro and Archangel P. Skaro (plaintiffs) filed a complaint on or about July 26, 1989 in the Court of Common Pleas of Allegheny County, Pennsylvania against Atlantic Financial Federal ("AFF"), requesting an accounting and other equitable and declaratory relief. AFF filed its answer on December 22, 1989. On December 18, 1992, Resolution Trust Corporation ("RTC") was appointed receiver for AFF and on January 8, 1993, RTC filed a notice of removal to the District Court for the Western District of Pennsylvania pursuant to 12 U.S.C. § 1441a($l$)(1).

By Consent Order dated June 13, 1994, Eastern Savings Bank ("ESB") was substituted for RTC as the "real party in interest" because ESB had purchased the plaintiffs' loan from RTC on or about October 1, 1993, and RTC was dismissed from the case. On June 15, 1994, plaintiffs filed the instant Motion for Remand, to which ESB responded on August 22, 1994. In the meantime, ESB filed a motion for leave to file an amended answer with counterclaim and affirmative defenses on July 8, 1994, to which plaintiffs responded on July 18, 1994. Because ESB suggested that the statute of limitations on its counterclaim could have run on July 25,

1994, the Court issued an order on July 21, 1994 permitting ESB leave to file its amended answer without deciding the issue of the Court's jurisdiction either over plaintiffs' complaint or over ESB's proposed counterclaim. At this time, therefore, the Court should address both of these issues in order.

#### Facts

During February 1977, plaintiffs purchased real estate known as 61 Colonial Manor Road, Westmoreland County, Pennsylvania ("the property"). In order to purchase the property, plaintiffs borrowed $250,000.00 from West Penn Federal Savings & Loan Association ("West Penn") in exchange for a mortgage bond with a 9% fixed interest rate and an original principal amount of $250,000.00 ("bond"). To secure payment of the bond, plaintiffs gave West Penn a mortgage on the property. On October 29, 1982, plaintiffs sold the property to Mid Atlantic Properties Corporation (Mid Atlantic), conditioned upon West Penn's allowing Mid Atlantic to assume the plaintiffs' $250,000.00 bond. West Penn permitted the assumption subject to the execution by Mid Atlantic and plaintiffs of a Mortgage Loan Assumption and Modification Agreement ("modification"). The modification, which was signed on December 15, 1982, reamortized the bond's then principal balance of $235,552.73 over 20 years at an interest rate of 13%. To secure payment of the sales price, plaintiffs also took back from Mid Atlantic a second mortgage note in the amount of $132,800.00 ("second mortgage note") and obtained a second mortgage on the property.

West Penn was later succeeded in interest by AFF. In approximately mid 1987, Mid Atlantic defaulted on the bond and mortgage, and on the second mortgage note. As a result of Mid Atlantic's default on the second mortgage note, plaintiffs accepted from Mid Atlantic a Deed in Lieu of Foreclosure dated January 8, 1988, thus taking title to the property subject to AFF's first mortgage. On or about April 15, 1988, AFF made written demand on plaintiffs to bring Mid Atlantic's defaults on the bond current.

In response to AFF's demand, plaintiffs complained that they had not been given

timely notice of Mid Atlantic's default on the bond and did not have sufficient funds to bring the bond current. In order to bring the bond current, plaintiffs entered into an Agreement with AFF dated July 25, 1988 (the "Side Agreement"). Pursuant to the Side Agreement, plaintiffs agreed to pay $48,286.35 in delinquent interest, late charges and negative escrow due under the bond, as modified, in monthly installments to be made separately from the monthly bond installment payments. Specifically, the Side Agreement required plaintiffs to repay the delinquent amounts by making an initial $10,-000.00 payment to AFF and subsequent payments as follows: "$6,000 every six months" after July 25, 1987.

Plaintiffs made the initial $10,000.00 payment and partial payments in January and July 1989 and January 1990. ESB asserts, however, that plaintiffs failed to make the July 25, 1990 payment and all payments thereafter.[1] ESB's counterclaim seeks to recover amounts unpaid by plaintiffs on the Side Agreement, allegedly totalling $28,-516.35.

### Plaintiffs' Motion for Remand

■ Plaintiffs move the Court to remand this action to the Court of Common Pleas of Allegheny County on the grounds that, now that RTC is no longer a party, the action cannot be said to "arise under" federal law such that it should be maintained in federal court. In response, ESB makes the following arguments: 1. although RTC is no longer a party, the Court may nevertheless maintain jurisdiction because RTC properly removed the action when it was a party and its subsequent dismissal does not affect this determination; and 2. in the alternative, the Court may exercise diversity jurisdiction over the action because the parties are citizens of different states and the amount in controversy exceeds $50,000.00 pursuant to 28 U.S.C. § 1332.

Although ESB's first argument has apparently not been addressed within the Third Circuit, the Fifth Circuit has discussed this issue and determined that the federal court should retain jurisdiction even after the federal receiver that removed the action has been dismissed from the case. In *Federal Savings & Loan Insurance Corp. v. Griffin*, Griffin asserted that the federal court lacked jurisdiction because the Federal Deposit Insurance Corporation (FDIC), whose predecessor had removed the action to federal court, had been dismissed from the action. The court began with the proposition that "[t]he power to remove is evaluated at the time of removal" and then held that:

> [W]e can conclude that Congress did not intend the result Griffin urges. The policy reasons for insuring federal jurisdiction over cases involving the actions of failed thrifts continue when the FDIC is voluntarily dismissed as a party and the owner of the failed thrift's assets remains. A transferee from FSLIC or FDIC, as successor of their other interests, is still entitled to the protection of the federal courts applying *D'Oench Duhme*, even when FSLIC or FDIC is voluntarily dismissed. In sum, federal jurisdiction is proper in this case because according to repealed § 1713(k)(1) or amended § 1819, the case arises under federal law.

935 F.2d 691, 697 (5th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992).[2] The federal court jurisdiction section for the FDIC, 12 U.S.C. § 1819(b)(2)(A), is nearly identical to the federal court jurisdiction section for the RTC, 12 U.S.C. § 1441a(*l*)(1).

The Fifth Circuit has affirmed the holding of *Griffin* in subsequent cases,[3] and the only court to reject the reasoning of *Griffin* has

---

**1.** It is because the first missed payment was on July 25, 1990 that ESB suggested the possibility that the four-year statute of limitations might have run on July 25, 1994. 42 Pa.C.S. § 5525(7).

**2.** The *D'Oench Duhme* doctrine is derived from the Supreme Court case of *D'Oench Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). It pro-

tects entities such as the FSLIC, FDIC and RTC from unrecorded side agreements that are not reflected in the bank's records.

**3.** See *Walker v. Federal Deposit Ins. Corp.*, 970 F.2d 114, 120 (5th Cir.1992); *Federal Sav. & Loan Ins. Corp. v. Mackie*, 949 F.2d 818, 822 (5th Cir.1992).

been the District Court for the District of Maine in *Mill Investments, Inc. v. Brooks Woolen Co.,* 797 F.Supp. 49 (D.Me.1992). This court held that, "[w]hile the language of FIRREA clearly evidences a 'strong Congressional intent that the *FDIC* enjoy federal jurisdiction,' *Villafane Neriz v. Federal Deposit Insurance Corp.,* 775 F.Supp. 490, 491 (D.P.R.1991) (emphasis added), there is no equivalent indication that Congress intended every case that formerly included the FDIC to be adjudicated in federal court." *Id.* at 54.

The Court of Appeals for the Third Circuit has articulated the proposition that "the nature of plaintiffs' claim must be evaluated, and the propriety of remand decided, on the basis of the record as it stands *at the time the petition for removal is filed.*" *Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa.,* 605 F.2d 119, 123 (3d Cir.1979), *cert. denied,* 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980). Therefore, this Court should follow the reasoning of the Fifth Circuit Court of Appeals in *Griffin* and hold that jurisdiction attaches at the time of removal, such that the subsequent dismissal of RTC does not oust this Court of federal question jurisdiction over this action.[4]

### *ESB's Counterclaim*

As noted *supra,* the Court permitted ESB to file an amended answer with counterclaim on July 21, 1994 without deciding whether the Court could exercise jurisdiction over it; if the pending remand motion were to be granted the question would be moot. Because the Court should exercise jurisdiction over plaintiffs' complaint for the reasons stated *supra,* the Court must now determine whether it should exercise jurisdiction over ESB's counterclaim.

■ Prior to the Judicial Improvements Act of 1990, case law precedents had determined that:

> Whether this court has subject matter jurisdiction over the counterclaim depends upon the nature of the counterclaim. If, on the one hand, the counterclaim is a

compulsory one, the court may have federal question or diversity subject matter jurisdiction. *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974). If, on the other hand, the counterclaim is merely a permissive one, the counterclaim must, generally, be supported by an independent basis of subject matter jurisdiction. *Aldens, Inc. v. Packel,* 524 F.2d 38, 52 n. 21 (3d Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

*Dinces v. Robbins,* 604 F.Supp. 1021, 1026 (E.D.Pa.1985). In other words, a court could exercise "ancillary" jurisdiction over a compulsory counterclaim, but not a permissive one. *Ambromovage v. United Mine Workers of America,* 726 F.2d 972, 988 (3d Cir.1984); *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 633–34 (3d Cir.1961). Permissive counterclaims must be supported by either a federal question or diversity of citizenship and an amount in controversy over $50,000.00, exclusive of interest and costs. *See Curtis v. J.E. Caldwell & Co.,* 86 F.R.D. 454, 457 (E.D.Pa.1980).

As part of the Judicial Improvements Act of 1990, Congress enacted a statute that codified (in most respects) the existing case law of "pendent" and "ancillary" jurisdiction under the new term "supplemental jurisdiction." The statute provides that:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The Court of Appeals has noted in passing that " '[s]upplemental' jurisdiction under the statute extends to any related claim of the defendant that arises out of the same case or controversy as the origi-

---

**4.** Because the Court should assert federal question jurisdiction on the basis of the RTC's removal of the action, it need not address ESB's alternative argument that the Court may assert diver-

sity jurisdiction over the action because ESB is a citizen of Maryland while plaintiffs are Pennsylvania citizens, and the amount in controversy exceeds $50,000.00.

nal claim." *In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1238 (3d Cir.1994) (citing 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure Civil 2d*, § 1436 at 11 (Supp.1993)).[5] *See also Federal Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850, 874 (3d Cir.1994); *Kirschner v. Castello*, Civ.A. No. 91–5985, 1992 WL 221334 (E.D.Pa. Sep. 3, 1992). Moreover, the Court of Appeals for the Seventh Circuit has specifically held that "[a] federal court has supplemental jurisdiction over compulsory counterclaims" pursuant to § 1367. *Unique Concepts, Inc. v. Manuel*, 930 F.2d 573, 574 (7th Cir.1991). *See also Mille Lacs Band of Chippewa Indians v. State of Minn.*, 853 F.Supp. 1118, 1146 (D.Minn.1994). Thus, the determination as to whether the Court can exercise jurisdiction over ESB's counterclaim depends upon whether the counterclaim should be considered compulsory or permissive.[6]

■ Plaintiffs suggest that, because ESB had to request "permission" of the Court to assert the counterclaim pursuant to Federal Rule of Civil Procedure 13(e), the counterclaim is by definition "permissive." This argument has been examined at length by the Court of Appeals for the Seventh Circuit, and it was rejected as being inconsistent with the purposes of the Rule. The court held that:

> The reason that permission is required is that the course of the litigation may be unduly interrupted if new claims are belatedly interjected; in that case permission will be denied and the defendant can bring his claim as an independent lawsuit.

> Closely related claims should if possible be tried together to spare the parties and the American judicial system the diseconomies of multiple proceedings. That indeed is the premise of Rule 13(e). [The defendant's] claim against [the plaintiff] is as closely related as it could be to [the plain-

tiff's] claim against [the defendant]—as closely related as it would be if it were a compulsory counterclaim within the meaning of Rule 13(a). *Every* consideration of judicial economy that argues for ancillary jurisdiction over Rule 13(a) counterclaims ... argues with equal force for ancillary jurisdiction over *this* Rule 13(e) counterclaim, although not every one since some Rule 13(e) counterclaims are permissive in the Rule 13(b) sense.

*Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 360–61 (7th Cir.1990). The *Harbor Insurance* case is supported by one of the major treatises on the subject of jurisdiction:

> Since a counterclaim under Rule 13(e) by definition does not mature until after a party has served his pleading, it falls under one of the exceptions to Rule 13(a) and is technically not a compulsory counterclaim.... Nonetheless, if that claim actually arises out of the same transaction as the original claim then it should be treated as if it were a compulsory counterclaim for jurisdictional purposes.... Thus, the fact that it is after-acquired is irrelevant for purposes of determining whether the claim should be within the subject-matter jurisdiction of the court.

6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure Civil 2d*, § 1429 at 212 (1990) (footnotes omitted).

In this instance, ESB's counterclaim did not "arise" until (at the earliest) July 25, 1990, when plaintiffs allegedly failed to make a semi-annual payment on the Side Agreement, long after the original defendant filed the original answer in December 1989. Nevertheless, if it meets the test for a compulsory counterclaim pursuant to Rule 13(a), the Court should exercise supplemental jurisdiction over it.

---

**5.** Technically, § 1367 did not apply to the *Texas Eastern* case because the counterclaim was filed before the effective date of the statute. Nevertheless, the Court should consider the comments made in *Texas Eastern* as an indication that the Court of Appeals accepts § 1367 as an enactment of preexisting case law principles with respect to the exercise of jurisdiction over counterclaims.

**6.** There is no possibility that the Court could exercise *original* subject matter jurisdiction over the counterclaim: it does not raise a federal question and, even if the Court were to accept ESB's argument that it is a "citizen" of Maryland for jurisdictional purposes, by ESB's own admission, the amount in controversy in the counterclaim is only $28,516.35. (Am. Answer ¶ 23.)

Rule 13 defines compulsory counterclaims as follows:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

F.R.Civ.P. 13(a). The Supreme Court has given the term "transaction" a broad definition:

"Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.... Essential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations ... does not matter.

*Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). And the Court of Appeals has held that:

a counterclaim is compulsory if it bears a "logical relationship" to an opposing party's claim. The phrase "logical relationship" is given meaning by the purpose of the rule which it was designed to implement. Thus, a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action.

*Great Lakes Rubber Corp.,* 286 F.2d at 634. *See also, Savarese v. Agriss,* 883 F.2d 1194, 1208 (3d Cir.1989); *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir.1978).

In this case, ESB argues that among plaintiffs' requests for relief is a request that the Court "excuse the accrual of interest and penalty as against Plaintiffs during time periods over which Plaintiffs did not have notice, but should have had notice, of the defaults of MID ATLANTIC PROPERTIES CORPORATION" (Compl. ¶ 16) and that such interest and penalties are precisely the sums which plaintiffs agreed to in the Side Agreement. Moreover, the interest and penalties addressed by the Side Agreement originally accrued under the modification agreement that the plaintiffs' complaint requests the Court to cancel. And in the original answer, AFF raised the existence of the Side Agreement in response to issues that plaintiffs asserted had been left unsettled. ESB therefore asserts that plaintiffs' complaint puts the enforceability of the Side Agreement directly at issue, even if plaintiffs avoid mentioning the existence of the Side Agreement explicitly.

With regard to the factors used to differentiate compulsory from permissive counterclaims, therefore, the Court can conclude as follows: 1. the counterclaim "does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction"; 2. the counterclaim appears to be related to the "transaction" of the complaint, broadly construed to include the Side Agreement as a subsequent occurrence that resulted from the agreements whose alleged breach led to the filing of the complaint; and 3. the counterclaim bears a logical relationship to the issues raised in the complaint. Therefore, the Court should find that the counterclaim is a compulsory counterclaim. *See Columbia Plaza Corp. v. Security Nat'l Bank,* 525 F.2d 620, 625 (D.C.Cir. 1975) (when plaintiffs brought suit in New York on deed of trust and guaranty but did not mention short-term notes later issued by bank and bank brought suit in D.C. on the notes, court enjoined New York action because it should have been brought as a compulsory counterclaim because it arose out of the same transaction).

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates,

objections to this report and recommendation are due by September 26, 1994. Responses to objections are due by October 11, 1994.

September 8, 1994

Dated